Affirmed and Memorandum Opinion
filed March 10, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-01089-CV



Michael Smith
Custom Clothier, Inc., d/b/a The Custom Shop, Appellant 

v.

Louis O.
Constantini, Appellee 



On Appeal from
the County Civil Court at Law No. 1

Harris County, Texas

Trial Court
Cause No. 931,943



 

MEMORANDUM OPINION 

Michael Smith Custom Clothier, Inc., d/b/a The Custom
Shop, appeals from a judgment favoring Louis O. Constantini.  Constantini sued
The Custom Shop over a set of allegedly ill-fitting custom shirts.  After a
trial to the bench, the trial court found that The Custom Shop failed to comply
with the contract between the parties, violated the Texas Deceptive Trade
Practices Act, breached express and implied warranties, and performed
negligently.  The court awarded Constantini $1,673 in actual damages and $4,300
in attorney’s fees.  On appeal, The Custom Shop contends that Constantini was
not entitled to judgment on any of his theories of recovery and that the
attorney’s fees awarded were excessive.  We affirm.

Background

            On November 10,
2007, while visiting his daughter in the Houston area, Louis Constantini was
measured for and placed an order for twelve custom-made shirts at The Custom
Shop location in Houston.  The shirts were delivered to Constantini’s New
Mexico residence on December 27, 2007.

            At the time of
Constantini’s purchase, The Custom Shop maintained certain policies that were
specified on a display in its Houston location as well as on the sales receipt Constantini
signed and the invoice he received.  As stated on the display, these policies
explained:

OUR GUARANTEE

Custom
Clothing, made to your measurements and styling, is non-refundable.

GUARANTEE -
We guarantee your satisfaction with our clothing for the following:

 

*FIT:  On issue
of fit, we reserve the right to correct size and fit problems if possible.

 

*STYLE:  On
issues of style we also reserve the right to correct styling features if
possible.

 

*FABRIC: On
issues of fabric, previous Custom Shop records do not reflect the prior information
on what you may have ordered in terms of color, type or pattern. Therefore, we
do not claim or guarantee your fabric selection as being the exact same as what
you may have ordered in the past. Fabric selection is the responsibility of the
individual customer.

 

If you have
issues with your order, they need to be addressed within 120 days of when the
order was placed.

 

ORDER PROCESSING
& DELIVERY: Orders typically take 6-8 weeks for delivery; please do not
call for status until 6 weeks have passed. . . .

 

According to Constantini’s trial testimony, he had
previously purchased from the San Diego, Dallas, and New York locations of The
Custom Shop on about five occasions.  When he went to the Houston location in
November 2007, he was measured by Ron Musgrove.  Upon receiving the shirts in
December, he set them aside over the holidays.  He opened them in mid-January
2008 and immediately noticed that the sleeves were too long, the neck was too
large, and the wrong cuff was larger; Constantini had requested the left-side
cuff be made larger to accommodate his watch, but the right-side was larger on
the finished shirts.

In mid-January, Constantini called Musgrove and told
him about the problems.  According to Constantini, Musgrove told him to wear
the shirts and launder them six times.  Constantini told Musgrove that the
problems were “really big,” but Musgrove reassured him that laundering would
correct them.  Constantini said that he washed the shirts four times but gave
up on that process because they did not fit any better.[1]

On April 17, 2008, Constantini mailed the shirts back
to The Custom Shop, along with a letter requesting a refund.  On May 1,
Constantini called Musgrove.  During their conversation, Musgrove told
Constantini that he (Constantini) had asked for the shirts to be too large and
had lost weight and that there was nothing The Custom Shop could do about the
shirts.  Constantini then asked to talk to someone at The Custom Shop’s
headquarters, and Musgrove gave him contact information for Patty Huckabaa. 
Constantini testified that at that point, he had not even considered whether
alterations could remedy the problems with the shirts.  His daughter had moved away
from the Houston area, and he planned to go to a San Diego location and order
the shirts again.

Constantini further testified that he called Huckabaa
on the same day he last talked to Musgrove.  He said that she was responsive
and accommodating at first and said she would call him “right back.” 
Constantini called her right back and left a message saying that although he
had no reason to return to Houston, he was willing to go to any other city to
get properly re-measured “to have the shirts redone . . . to include . . .
corrections if it could be done.”

Despite Constantini leaving “probably” five messages at
different times for Huckabaa, she did not get back to him for several months. 
In his last message, Constantini stated that he was going to hire legal
counsel, but still received no reply.  He hired counsel in August 2008, and
counsel sent a demand letter to The Custom Shop that month.  In November 2008,
Constantini spoke to Michael Smith, who Constantini believed to be the owner of
The Custom Shop.  According to Constantini, Smith screamed at him when he tried
to explain his problems, and then Smith hung up on him.

Also in November 2008, Huckabaa sent an email to
Constantini, explaining that the problems with the shirts were fixable and
requesting that he send her a shirt that fit in the collar and sleeve and tell
her what needed to be changed.  In his responsive email, Constantini objected
to that method of obtaining a custom-made shirt, detailed the lack of response
he had received over the preceding several months, and indicated that he was
leaving for San Diego to visit his daughter, bemoaning the lost opportunities
to have been re-measured in San Diego on prior trips.[2]

During cross-examination, Constantini testified that
he did not know the shirts were nonrefundable at the time he purchased them,
but he acknowledged that he “should have seen the sign” and that he did sign
the receipt on which the policy also appeared.  He additionally stated that
during his May conversation with Musgrove, he did not have an opportunity to
ask that the shirts be adjusted.  Constantini further averred that he agreed in
his first conversation with Huckabaa to have the shirts corrected, even though
he could not imagine how they could have been corrected.  He also offered to be
re-measured in “any other store.”

Michael Lampear, an employee of The Custom Shop,
testified that it was a fairly simple procedure to fix collars, sleeves, and
cuffs.  He acknowledged, however, that he never saw the shirts at issue in this
case and that custom shirts are expected to fit.  He further explained that it
was the policy of The Custom Shop that customers had 120 days in which to
complain about any problems with their order.  He said that a customer needs
some time to wear and launder the clothing and to get comfortable with it.  He
also said that people can lose or gain weight.  Except for testimony from
counsel regarding attorney’s fees, discussed in detail below, no one else
testified at trial in this matter.

After trial, the parties provided the court with
joint proposed findings of fact and conclusions of law, which the court adopted
as its own.  Among the findings of fact, the court found that within thirty
days of receiving the shirts, Constantini tried on several of them and noticed
that the “neck size was much larger than what was measured, the sleeves were
much longer than measured, and the large cuff size
was on the wrong arm.”  The court also found that The Custom Shop displayed a
sign which included the no-refund policy and that Constantini was aware of the
policy at the time of his purchase.  The court further made numerous specific
findings in keeping with Constantini’s version of events.

In its conclusions of law, the court stated that the
parties had a contract for the sale of twelve custom made shirts for $1,673,
that Constantini fully complied with the contract, and that The Custom Shop
failed to comply.  The court specifically held that Constantini “timely and
duly notified” The Custom Shop of the problems.  The court also concluded that
The Custom Shop violated various provisions of the Texas Deceptive Trade
Practices Act (DTPA), breached express and implied warranties, and performed
negligently.  In its judgment, the court awarded Constantini $1,673 in actual
damages, $4,300 in attorney’s fees, and post-judgment interest on both sums.

We will begin our analysis by considering whether the
trial court’s judgment is supported by its breach-of-contract findings.  We
will then consider The Custom Shop’s arguments regarding its no-refund and
120-day policies, as well as its challenge to the trial court’s finding
regarding laundering of the shirts.  Lastly, we consider whether the court
awarded excessive attorney’s fees.

Breach of Contract

The Custom Shop contends that the trial court’s
judgment cannot be based on its breach-of-contract (“failure to comply”) finding
because Constantini did not include that cause of action in his petition. 
Generally, a court’s judgment must conform to the pleadings.  See Tex.
R. Civ. P. 301.  However, if issues not raised by the pleadings are tried by
express or implied consent of the parties, these issues shall be treated as if
they had been raised by the pleadings.  See id. 67, 301; Baltzer v.
Medina, 240 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2007, no pet.). 
To determine whether a particular issue was tried by consent, we must examine
the record not for evidence of the issue, but for evidence of trial of the
issue.  Greene v. Young, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st
Dist.] 2005, pet. denied).

During his brief opening statement, Constantini’s counsel
told the court that “[t]he cause of action is
based upon breach of contract, the Deceptive Trade Practices Act, negligence,
and breaches of express and implied warranty, Your Honor.”  Further, as
explained in detail above and below, there was considerable evidence during
trial regarding the terms of the agreement between the parties, as well as The
Custom Shop’s alleged failure to perform as promised.  Lastly, the finding that
The Custom Shop failed to comply with the agreement was contained in the parties’
joint proposed findings of fact and conclusions of law, which the court adopted
as its own findings and conclusions.  The Custom Shop does not cite to any
point in the proceedings at which it objected to trial of the breach of
contract claims.[3] 
Accordingly, the breach-of-contract claim was tried by consent and supports the
judgment.

Limitation on Remedies—The No-Refund Policy

            Under its first
issue, The Custom Shop contends that given the no-refund policy, Constantini
was not entitled to an award of money damages.  In support, The Custom Shop
cites section 2.719 of the Uniform Commercial Code, which permits parties to a
sale of goods to contractually modify or limit the available remedies.  Tex.
Bus. & Com. Code § 2.719.  Further, The Custom Shop asserts that there was
no evidence or finding that it waived the no-refund policy or that it refused a
request from Constantini to make adjustments to the shirts within the allegedly
applicable 120-day period.

In analyzing this issue, the language used in the
policy is of utmost importance.  See Cherokee County Cogeneration Partners,
L.P. v. Dynegy Mktg. & Trade, 305 S.W.3d 309, 312 (Tex. App.—Houston
[14th Dist.] 2009, no pet.) (“Our primary concern when interpreting a contract
is to ascertain and give effect to the parties’ intent.  We therefore focus on
the language used in the contract because that is the best indication of the
parties’ intent.”).  Here, the entirety of The Custom Shop’s policy was stated
as a guarantee.  It specifically guaranteed the customer’s satisfaction with
the clothing under certain parameters.  It began:  “Custom Clothing, made to
your measurements and styling, is non-refundable.”  The very crux of the case
here was whether the clothing was made to Constantini’s measurements.  In finding
of fact six, the trial court specifically found that it was not.[4]  This
finding was supported by evidence.  Constantini testified at length regarding
how ill-fitting the shirts were.  He stated that the neck drooped downward when
he wore a tie.  He said that the sleeves went all the way to his fingers.  And
he explained that the incorrect cuff had been made larger; he wanted the cuff
on his left sleeve to be larger to accommodate his watch but instead the right-side
cuff was made larger.  Photographic evidence was also presented in support of
the neck and sleeve-length issues.  Although The Custom Shop suggests that
repeated launderings may have helped, it does not otherwise dispute that the
clothing did not fit.  In short, the evidence was sufficient to support the
trial court’s finding that the clothing was not made to Constantini’s
measurements; thus, under the terms of the policy itself, the no-refund
language did not apply.[5]

            The Custom Shop
further points out that the policy also stated:  “On the issue of fit, we reserve
the right to correct size and fit problems if possible.”  The Custom Shop suggests
that Constantini deprived it of that right by “his failure to take any steps to
have the shirts adjusted and his insistence on a refund.”  We disagree.

According to his testimony, Constantini informed The
Custom Shop of the problems with the shirts as soon as he became aware of
them.  After laundering them—on Musgrove’s instructions but not to the extent
instructed—Constantini then sent the shirts back to the location where he had ordered
them.  While he did request a refund at that time, at no point did Constantini
refuse The Custom Shop an opportunity to correct the problems.  Indeed, he
testified that Musgrove told him that nothing could be done.  Constantini
further testified that he told Huckabaa that he was willing to go to any other
city to get properly re-measured “to have the shirts redone . . . to include .
. . corrections if it could be done.”  Afterwards, the evidence shows,
Constantini made repeated attempts to communicate with Huckabaa, and even the
president of the company, but to no avail.  Finally, after months passed and
Constantini’s counsel sent a demand letter to The Custom Shop, Huckabaa offered
to adjust the shirts based on a shirt Constantini was to send to her. 
Constantini rejected this post-demand offer.[6]

The evidence thus supports the conclusion that
Constantini paid his money but The Custom Shop did not provide him with custom
clothing made to his measurements and did not exercise its right to correct
size and fit problems.  Consequently, the trial court did not err in concluding
that Constantini fully complied with the contract but The Custom Shop did not. 


120-Day Policy

Also in its first issue, The Custom Shop contends that
the trial court erred in concluding that Constantini complied with store policy
by notifying The Custom Shop of the problem with the shirts within 120 days of
when he placed his order.  This dispute focuses on the meaning of the following
language in the policy:  “If you have issues with your order, they need to be
addressed within 120 days of when the order was placed.”  The trial court found
in finding twenty-three “[t]hat Constantini addressed his issues with the order
of the shirts with The Custom Shop within 120 days of the date the order was placed.” 
In conclusion of law three, the court held that Constantini “timely and duly notified [The Custom
Shop] of the problems with the shirts, in accordance with [The Custom Shop’s]
policy.”

The
Custom Shop specifically contends that in making these holdings, the trial
court applied the wrong definition of “address” as used in the policy.  The
Custom Shop urges that “address” in this context means “to direct the efforts
or turn the attention of (oneself),” quoting Webster’s Third New
International Dictionary 24 (1993).  On this basis, The Custom Shop maintains
that Constantini’s one telephone call to Musgrove during the 120-day period was
insufficient to demonstrate that he “addressed”—i.e., directed his
efforts or attention to—the problems with the shirts in a timely manner.  It
also points out that after being told in that one telephone conversation to
wash the shirts, Constantini failed to report the results of laundering the
shirts, or request The Custom Shop to take any action, before the expiration of
the 120-day period.  Lastly, The Custom Shop asserts that had the intent of the
policy been to  require only notice of a problem within 120 days, as the trial
court implicitly held, then the terms “notice” or “notify” would have been used
instead of “addressed.”

We disagree with The Custom Shop’s interpretation of
the policy language.  Constantini addressed the problems with the shirts by
calling Musgrove, telling him about the problems, and beginning to work toward
a resolution.  Even under the definition of “address” cited by The Custom Shop,
Constantini directed his efforts and turned his attention to the issue of the
ill-fitting shirts.  It is unclear from The Custom Shop’s interpretation just
how much Constantini would have to have done in order to have “addressed” the
fit issues within the 120-days.  The Custom Shop’s argument appears to only be
“more than he did.”  The policy itself, however, only requires that any issues
“be addressed” within 120 days; it does not expressly or implicitly require
that all issues be resolved or even that significant progress be made toward
resolution.  Accordingly, the trial court did not err in concluding that
Constantini complied with store policy by notifying The Custom Shop of the
problem with the shirts within 120 days.

Laundering the Shirts

            The Custom Shop
also takes issue with the trial court’s finding that despite several of the
shirts “being washed four or more times . . . they still did not fit.”  As the
Custom Shop points out, Constantini testified somewhat inconsistently on this
topic, suggesting he washed the shirts four or more times at one point but
saying at another place in his testimony that he did so “at least twice.”  The
Custom Shop also insists that “there [was] no evidence that laundering the
recommended six times would not have resulted in a well-fitting shirt.”  With
this latter contention we disagree.  Clearly, as Constantini testified, washing
the shirts could not have corrected the alleged error in making the wrong cuff
larger.  Constantini further testified that after several washings, he realized
that further washings would not correct the sizing issues given the extent of
the mistakes.  This testimony was supported by photographic evidence showing a
drooping collar and sleeves down to Constantini’s knuckles.  As trier of fact,
the judge was free to conclude, based on this evidence, that further washings
would not have resolved the fit issues; this is true whether Constantini washed
the shirts “four or more times” or “at least twice.”  Having found none of The
Custom Shop’s arguments under its first issue to have merit, we overrule the
first issue.

Additional Issues

            In its second and
third issues, The Custom Shop challenges, respectively, the trial court’s
findings on negligence and various DTPA violations.  However, because the
damages awarded by the court are supported by the breach-of-contract finding
discussed above, we need not consider these challenges to alternative theories
of recovery.  Consequently, issues two and three are overruled as moot.

Attorney’s Fees

In its fourth issue, The Custom Shop contends that the
trial court awarded excessive attorney’s fees to Constantini.[7]  The Custom
Shop emphasizes that the court awarded $4,300 in attorney’s fees when the
actual damages in the case only amounted to $1,673.

The determination of reasonable attorney’s fees in a
given case is usually a question for the factfinder.  Stewart Title Guar.
Co. v. Sterling, 822 S.W.2d 1, 12 (Tex. 1991).  Factors commonly cited in
assessing the reasonableness of fees include:  (1) the time and labor required,
the novelty and difficulty of the questions involved, and the skill required to
perform the legal service properly; (2) the likelihood that the acceptance of
the particular employment will preclude other employment by the lawyer; (3) the
fee customarily charged in the locality for similar legal services; (4) the
amount involved and the results obtained; (5) the time limitations imposed by
the client or by circumstances; (6) the nature and length of the professional
relationship with the client; (7) the experience, reputation, and ability of
the lawyer or lawyers performing the services; and (8) whether the fee is fixed
or contingent on results obtained or uncertainty of collection before the legal
services have been rendered.  Arthur Andersen & Co. v. Perry Equip.
Corp., 945 S.W.2d 812, 818 (Tex. 1997) (citing Tex. Disciplinary R. Prof’l
Conduct 1.04).  It is also well-established that attorney’s fees should generally
bear some reasonable relationship to the amount in controversy.  See, e.g.,
Bank of Texas v. VR Elec., Inc., 276 S.W.3d 671, 684 (Tex. App.—Houston
[1st Dist.] 2008, pet. denied).  However, there is no rule that fees cannot be
more than actual damages, and fees in excess of three times the amount of
actual damages have been affirmed on appeal as reasonable under the
circumstances.  See, e.g., Bencon Mgmt. & Gen. Contracting, Inc.
v. Boyer, Inc., 178 S.W.3d 198, 210-11 (Tex. App.—Houston [14th Dist.] 2005,
no pet.); Murrco Agency, Inc. v. Ryan, 800 S.W.2d 600, 606-07 (Tex.
App.—Dallas 1990, no writ).

As The Custom Shop points out, this was a fairly
simple case.  The clerk’s record reveals few filings in the case, and the
reporter’s record (101 pages long) reveals that trial proceedings were not
particularly lengthy.  During his testimony, counsel for Constantini urged the
court to award $6,831.33 in attorney’s fees.  He said that he worked about 24
hours on the case through trial and that his normal rate was $315 an hour.  He
explained his educational and professional background and detailed the
following work on this case:  initial consultation; review of documents;
drafting of DTPA-demand letter, various motions, pleadings, correspondence, and
a mediation memorandum; attendance at an approximately four-hour mediation;
messages left with defendant and telephone conversations with opposing counsel;
review of relevant cases; and preparation for and attendance at trial.

Counsel for The Custom Shop also testified regarding
attorney’s fees.  He initially asserted that “a reasonable hourly fee for a
matter of this size and complexity . . . would be in a range of 175 to maybe
215, 240 an hour at the outside.”  He further calculated that about ten hours
could have reasonably been spent on the case before the beginning of trial
preparations.  He indicated that trial preparation itself should not have taken
long and pointed out that the trial judge would himself know how long the trial
took.  Under cross-examination, counsel acknowledged that his opposing counsel
(Constantini’s counsel) had become involved in the case almost a year before he
did.  In its brief, The Custom Shop argued that a reasonable total for time on
the case would have been seventeen hours (presumably ten hours before
trial-preparation, as counsel testified, plus seven hours for trial preparation
and trial itself).[8]

Even if we examined only The Custom Shop’s and its
counsel’s representations regarding a reasonable rate (up to $240 an hour) and
a reasonable amount of time spent on the case (seventeen hours), we would derive
a figure ($4,080) that is very close to that awarded by the trial court
($4,300).  Certainly, given the detailed testimony of both counsel, there was
sufficient evidence to support the trial court’s award of $4,300 in attorney’s
fees.  Consequently, we overrule The Custom Shop’s fourth issue. 

            We affirm the
trial court’s judgment.                                                                               

                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

Panel consists of Justices Brown, Boyce,
and Jamison.

 









[1]
As will be discussed below, Constantini offered somewhat inconsistent testimony
regarding the number of washings, stating four times at one point and “at least
twice” at another.





[2]
In his testimony, Constantini explained that his mention of San Diego was
intended as a suggestion that he be re-measured there, but The Custom Shop
never followed up on that suggestion.





[3]
At the close of evidence, the trial court requested brief closing argument from
counsel but stated that it did not require recordation by the court reporter. 
The record does not contain a transcript of closing arguments.





[4]
Finding six reads as follows:  “Within thirty days of their arrival, Plaintiff
tried on several of the shirts and noticed that the shirt neck size was much
larger than what was measured, the sleeves were much longer than measured, and
the large cuff size was on the wrong arm.”





[5]
Constantini does not dispute that, had the shirts been made to his
measurements, he would not have been able to return them for a refund.





[6]
The trial judge stated during trial that he considered Huckabaa’s offer to be a
settlement offer because it came after The Custom Shop’s receipt of
Constantini’s demand letter.  The Custom Shop did not dispute this
characterization in the trial court and does not do so on appeal.





[7]
As a sub-issue under issue four, The Custom Shop also argues that the court
erred in awarding any attorney’s fees to Constantini because he was not
entitled to any actual damages.  Because, as explained above, Constantini was
entitled to actual damages, this sub-issue is moot.





[8]
In other parts of his testimony, The Custom Shop’s counsel indicated that $200
would be “[m]ore reasonable” for a case of this nature.  He also averred that a
40-percent contingency fee would have been “[m]ore appropriate.”  However, as
trier of fact, the trial court was entitled to accept counsel’s statement that
a fee of up to $240 was reasonable and disregard the other testimony.