**COUNTY OF GALVESTON, Texas, Appellant**

v.

**TRIPLE B SERVICES, LLP, Appellee**

**NO. 01–15–00565–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued May 26, 2016

Rehearing Overruled July 12, 2016

Paul A. Ready, Robert B. Boemer, Barry C. Willey, Galveston County Legal Department, Galveston, TX, for Appellant.

William B. Davis, Robert A. Plessala, Andrews Myers, P.C., Houston, TX, for Appellee.

Panel consists of Justices Bland, Brown, and Lloyd.

## OPINION

Harvey Brown, Justice

Triple B Services, LLP filed a lawsuit against Galveston County in a dispute over a road-expansion contract. In that lawsuit, Triple B asserted claims, in relevant part, for (1) "disruption damages" resulting from the County's alleged breach-of-contract, (2) interest under the Prompt Payment Act, and (3) attorney's fees. The County filed a plea to the jurisdiction for those three claims, which was denied by the trial court.

The County appeals the order denying its plea. We must determine whether the statutory waiver of a county's sovereign immunity on breach-of-construction-contract claims applies to Triple B's three claims. To do so, we must decide whether Section 262.007 of the Local Government Code, which waives a county's immunity for breach-of-construction-contract damages that are "a direct result of owner-caused delays," (1) allows a claim for "disruption" damages, which are those damages suffered when the non-breaching party completes the project timely—i.e. without delays—but incurs additional costs because of the other party's inefficiencies; (2) waives immunity for interest under the Prompt Payment Act; and (3) creates a substantive right to attorney's fees.

We affirm in part and reverse in part, dismissing Triple B's claims for attorney's fees for lack of jurisdiction.

### Factual Background

Galveston County contracted with Triple B to expand a three-mile stretch of road. Under the contract, the County was responsible for moving certain utilities, including "gas, water, [and] fiber-optic cables." The contract, according to Triple B's damages expert, established a "baseline schedule ... created by the County's engineer, [and, starting on a particular date] shows unhindered access" along the area of the road where the utilities were located. The contract provided for "delay damages" if the Contractor's request for those damages "is determined to be compensable."

Although Triple B's plans for the construction project anticipated that the County would move the utilities by a par-ticular date, the County did not move the utilities until almost a year later.[1] Nevertheless, Triple B completed the expansion by the contractual deadline. Triple B contends that it incurred additional costs to timely complete the project as a direct result of the County's alleged delay in moving the utilities. These costs include additional costs to hand-form manholes, set and reset barricades, have extended field office overhead, and cover additional labor, equipment, street cleaning, flagging, and traffic control.

After completing the expansion, Triple B sued the County for breach of contract for those alleged additional costs. In its petition, Triple B claims as damages "amounts owed as compensation for the increased cost for Triple B to perform the work on the Project as a direct result of County-caused delays in completing utility adjustments; and amounts owed for additional work Triple B was required to [perform to] carry out the contract."

The County filed a plea to the jurisdiction. It argued that the trial court lacked subject-matter jurisdiction because the statute waiving a county's sovereign immunity for construction contracts only waives immunity for delay damages and thus, by seeking disruption damages, "Triple B seeks only damages excluded from recovery ..." *See* TEX. LOC. GOV'T CODE ANN. § 262.007 (West 2005). The trial court denied the County's plea to the jurisdiction. The County appeals.

The County relies heavily on the testimony of Triple B's expert witness who testified on the damages Triple B suffered because of the County's delay. Because the County did not timely move the utilities as Triple B had anticipated in its

---

1. The County argued that the date was not a hard deadline and that, in fact, it had put Triple B on notice that the utility adjustments had not been completed at the time of the contract.

original construction plan, those plans, according to that expert, were "disrupted." Thus, Triple B revised its plans to allow it to complete the expansion by the contractual deadline despite the County's delay in moving the utilities.

The changes, however, according to Triple B's petition, caused Triple B to incur an increased cost to perform the work. Triple B's expert examined the "daily summaries" of Triple B's work and "the manner [the project] was intended to be executed ... [and] the manner by which the project was actually executed and some of the specific things that caused that deviation." Using this information, the expert testified that Triple B had to adjust its approach to accommodate the County's delay by "segmenting the work into smaller segments of the roadway, waiting on the utilities ... just a various sundry of impacts that caused them to not be as productive from a direct labor standpoint."

According to the deposition testimony of Triple B's expert, this "waiting" caused Triple B to waste "man-hours trying to deal with working around utilities and bouncing around back and forth and dealing with not being able to set barricades and ... progress the roadway [in the way] that they thought they would be able to in an unhindered manner." It also had to add "a number of crews because they were working in so many different areas to try and progress the work...." Additionally, "Triple B had to basically wait and basically get [an existing septic tank that nobody realized existed] drained and out of the way. There [were] some electrical lines and gas lines and that sort of thing .... that hinder[ed] the progression of the work." Triple B's clean-up crew also had to perform additional work because "whenever you slow down that progression and create situations where you're excavating

and you're staging materials in one location[,] ... you wind up with ... more debris than if you were just moving in a steady progressive manner."

Although the expert testified to costs that Triple B incurred "as a direct result of County-caused delays in completing utility adjustments," he explicitly denied that the damages were "delay damages" as understood in construction law. He distinguished between "delay" damages and "disruption" damages: "delay is schedule driven, calendar driven, and ... leads into a certain category of damages that are time-based or calendar-based-type costs like salary personnel, if you will; whereas disruption is really an impact to the number of man-hours—that's more of a task-based issue as opposed to calendar-based." But he also testified that disruption damages could be caused by a delay: utilities may be "out of the way in a given segment, hypothetically, ... but there's still ... disruption to possibly dirt crews that are slowed down by a utility crew, [or] having to double handle or relocate barricades."

 In responding to a cross-examination question of whether his damages calculations included damages under the delay-damages provision of the contract, the expert responded that "there's a legal argument there that's outside of my bailiwick because I'm not a lawyer, but ... I did consider it, as well as the rest of the contract that I read, in quantifying my damages." Upon further questioning, he agreed that "there's no delay damage listed in ... my summary of damages ... I do see [the contractual] descriptions of various delay-type damages. And the damages that I have quantified do not, in my opinion, fall within those descriptions." The County relies on the expert's denial that the damages were "delay" damages

under the contract.[2]

## Disruption Damages and Delay Damages

The County makes two primary arguments to support its contention that Triple B is seeking "delay" damages which, in its view, do not fall within the scope of the legislative waiver of sovereign immunity set forth in Section 262.007 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 262.007. First, while acknowledging that the statute does not use the phrase "delay damages," the County contends that the phrase "owner-caused delays" in Section 262.007(b)(1) limits the statute's application to "delay damages," and, therefore, does not include "disruption damages." And, because Triple B's expert testified that Triple B was not seeking "delay" damages, the County maintains that its sovereign immunity is not waived. Second, "whether or not the legislature said 'delay damages,' it also expressly excluded consequential damages" and the damages that Triple B alleges are consequential damages, for which immunity is not waived.

Triple B agrees that its disruption damages do not meet the definition of "delay damages" as traditionally understood in construction law. But it argues that the statutory waiver of sovereign immunity for damages that are "a direct result of owner-caused delays or acceleration" includes more than "delay damages" as defined under construction law: "Disruption and lost productivity costs are ... recoverable damages under the clear meaning of the words of the statute."

Under construction law, delay damages have a technical definition distinct from disruption damages. Delay damages refer to damages "arising out of delayed completion, suspension, acceleration or disrupted performance"; these damages compensate the contracting party that is injured when a project takes longer than the construction contract specified. PHILLIP J. BRUNER & PATRICK J. O'CONNOR, 5 CONSTRUCTION LAW § 15:29 (2002); *see Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 393 (Tex.1997) (referring to delay damages as "a term of art in the construction industry referring to compensable damage from a delay that could have been avoided by due care").

Disruption damages, on the other hand, are for a project that may be timely completed but nevertheless includes disruption to the contractor and compensates it for "a reduction in the expected productivity of labor and equipment—a loss of efficiency

---

2. The County also relies on Triple B's written discovery responses, which generally referred to the oral testimony of unspecified witnesses. The County argues that Triple B's expert's testimony *"was* [its] interrogatory response on the subject of damages ...." and, thus, Triple B is bound by his classification of its damages as not falling under the contract's delay damages provision. Even if we were to ignore Triple B's objections to the interrogatory and hold that the expert's testimony was relevant to whether Triple B asserted delay damages, an expert cannot ordinarily testify on the law and, thus, we cannot be bound by his classification of Triple B's damages. *See Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex.App.—Houston [14th Dist.] 2004, no pet.) (expert cannot testify on pure questions of law). An expert's legal opinions "cannot be treated as if they were evidentiary support for the ultimate conclusion which was solely the province of the trial judge." *In re Texas Windstorm Ins. Ass'n*, 417 S.W.3d 119, 136 n. 16 (Tex.App.—Houston [1st Dist.] 2013, no pet.). The classification of damages is a question of law. *Sharif v. Steen Auto., LLC*, 370 S.W.3d 126, 148 (Tex.App.—Dallas 2012, no pet.); *Pressil v. Gibson*, 477 S.W.3d 402, 408 (Tex.App.—Houston [14th Dist.] 2015, pet. filed). Thus, we are not bound by Triple B's expert's classification of its damages in interpreting Section 262.007. Moreover, we agree with Triple B that its expert's analysis of its damages "is *factually* based on the County's one year *delay* in completing the utility adjustments."

measured in reduced production of units of work within a given period of time." BRUNER & O'CONNOR, 5 CONSTRUCTION LAW § 15:102. Disruption damages can also be caused by an "event [that] both disrupts and delays a critical path activity. . . ." *Id.* at § 15:103. A project that finishes on time but at greater expense because of disruptive events or scheduling errors presents a claim for disruption damages. *See Sauer Inc. v. Danzig,* 224 F.3d 1340, 1348–49 (Fed.Cir.2000) (distinguishing between "delay claim" in which completion of project is delayed and "disruption claim" in which non-breaching party is entitled to "equitable adjustment to cover increased costs which were the direct and necessary result of the change or changed conditions, where the condition or the change directly leads to disruption, extra work, or new procedures"); *U.S. Indus., Inc. v. Blake Const. Co.,* 671 F.2d 539, 546–47 (D.C.Cir. 1982) (distinguishing between "delay damages" that compensate non-breaching party's inability to work because of breaching party's delay and "disruption damages" that compensate non-breaching party for damages suffered because delay made non-breaching party's "work more difficult and expensive than [it] anticipated and than it should have been"); BRUNER & O'CONNOR, 5 CONSTRUCTION LAW § 15:103 (disruption damages are damages caused by "delays . . . . regardless of whether the contractor timely completed its own obligation to the owner" as opposed to delay damages, which require the party to have "delayed completion" of the project).

## A. Section 262.007 waives immunity for breach-of-construction-contract claims against County

Under the doctrine of sovereign or governmental immunity, a government agency cannot be sued without its consent. *Tooke v. City of Mexia,* 197 S.W.3d 325, 331 (Tex.2006). Texas law recognizes two components of sovereign immunity: (1) "immunity from liability, which bars enforcement of a judgment against a governmental entity," and (2) "immunity from suit, which bars suit against the entity altogether." *Id.* at 332. To recover against a governmental entity, both forms of immunity must be waived. *See id.*

By entering into a contract, a government entity waives immunity from liability for breach of that contract, "voluntarily binding itself like any other party to the terms of the agreement. . . ." *Id.* But the entity does not, thereby, waive immunity from suit. *Id.* Instead, only the Legislature can waive an entity's immunity from suit by "clear and unambiguous" statutory language. *Id.* at 329, 332–33; *see* TEX. GOV'T CODE ANN. § 311.034 (West 2013) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). This allows the Legislature to "respond to changing conditions and revise existing agreements if doing so would benefit the public." *Tex. Nat. Res. Conservation Comm'n v. IT—Davy,* 74 S.W.3d 849, 854 (Tex.2002).

The Legislature has provided a limited waiver of immunity for breach-of-construction-contract lawsuits against a county. TEX. LOC. GOV'T CODE ANN. § 262.007 (West 2005). To meet the statutory requirements of waiver of sovereign immunity, a party must plead damages that are recoverable under the statute. *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cty.,* 449 S.W.3d 98, 109–10 (Tex.2014); *see Tooke,* 197 S.W.3d at 346; *Trant v. Brazos Valley Solid Waste Mgmt. Agency, Inc.,* 478 S.W.3d 53, 62–63 (Tex.App.—Houston [14th Dist.] 2015, pet. denied) (interpreting identical statute waiving immunity for

breach-of-construction-contract lawsuits against local government entities other than counties and holding that, because plaintiff did not plead damages under statutory waiver of immunity, sovereign immunity barred claim).

The damages available in such breach-of-construction-contract lawsuits against a county are limited to:

(1) *the balance due and owed* by the county under the contract as it may have been amended, *including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;*

(2) the amount owed for change orders or additional work required to carry out the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law.

TEX. LOC. GOV'T CODE ANN. § 262.007(b) (emphasis added).

The statute prohibits recovery of certain other damages, including "consequential damages, except as allowed under Subsection (b)(1)." *Id.* at § 262.007(c)(1).

## B. Standard of review

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction over a case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000); *Pineda v. City of Houston,* 175 S.W.3d 276, 279 (Tex.App.—Houston [1st Dist.] 2004, no pet.). Subject-matter jurisdiction is required for a court to have authority to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex. 1993). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* at 446; *Richardson v. First*

*Nat'l Life Ins. Co.,* 419 S.W.2d 836, 839 (Tex.1967).

When, like here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the evidence submitted by the parties to determine whether jurisdiction exists. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. On the other hand, we accept as true non-contested jurisdictional facts in the petition. *Blue,* 34 S.W.3d at 554.

The existence of subject-matter jurisdiction is a question of law. *State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). In interpreting a statute purporting to waive sovereign immunity, it must not be construed as waiving sovereign immunity unless the waiver is "clear and unambiguous." TEX. GOV'T CODE ANN. § 311.034. Therefore, we review de novo the trial court's ruling on a plea to the jurisdiction. *Mayhew,* 964 S.W.2d at 928.

## C. Triple B's alleged "disruption damages" are not barred by sovereign immunity to the extent it seeks recovery for increased costs to perform

We conclude that Section 262.007 allows a claim for disruption damages against a county if the disruption damages directly result from the county's delay in performance of its contractual obligations based on the statute's plain text, which does not distinguish between "delay dam-

ages" and disruption damages directly caused by the breaching party's delay.

#### 1. Section 262.007 waives immunity for increased costs directly caused by a county's delay

In interpreting a statute, "[w]e must enforce the statute as written and refrain from rewriting text that lawmakers chose." *Jaster v. Comet II Constr., Inc.,* 438 S.W.3d 556, 562 (Tex.2014). We must give a statute's words their ordinary, everyday meanings unless we are given some reason to believe that the text of the statute indicates that the legislature intends the words to be interpreted in a technical sense. *Traxler v. Entergy Gulf State, Inc.,* 376 S.W.3d 742, 747 (Tex.2012); *see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012) (calling this rule the "most fundamental semantic rule of interpretation"). We "apply the plain meaning ... unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Jaster,* 438 S.W.3d at 562.

Section 262.007 does not use the words "delay damages" to explain the types of damages recoverable against a county; instead, it uses the phrase damages caused "as a direct result of owner-caused delays or acceleration." TEX. LOC. GOV'T CODE ANN. § 262.007(b)(1). We cannot "rewrite" the "text that lawmakers chose" by reading the statute to state that sovereign immunity is only waived for "delay damages." Whether "disruption damages" can be damages resulting from "owner-caused delays or acceleration" hinges on the interpretation of the words "delay" and "direct" and the phrase "under the contract."

#### (1) "Delay"

"Delay" means to "impede the progress of, cause to linger or stand still; to retard, hinder." 4 THE OXFORD ENGLISH DICTIONARY 409 (2d ed. Oxford Univ. Press 1989); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed.2003) (defining delay as to "stop, detain, or hinder for a time; to cause to be slower or to occur more slowly than normal"). "The ordinary meaning of the word 'delay' " encompasses both delays to the final performance date and delays to specific tasks that must be completed under the contract. *See Tenn. Valley Marble Holding Co. v. Grunley Constr.,* 433 F.Supp.2d 104, 109–11 (D.D.C.2006) (holding that contractual provision allowing "damages for delays recovered on [Supplier's] behalf by the Contractor from the Owner" includes disruption damages because "the ordinary meaning of the word 'delay' " encompasses disruption damages that are caused by other party's late performance).

Although Triple B finished the project on time and was never completely "stopped," it was "hindered" because of the County's actions. Thus, any damages from the "disruption" of a construction project that was stopped, hindered, or caused "to occur more slowly than normal" are allowed under Section 262.007. We do not see any reason to depart from the ordinary meaning of the words in the statute. The statute allows a contractor, like Triple B, to recover any damages that are "a direct result of owner-caused delay." [3]

---

**3.** Courts refuse to apply a formalistic approach to categorizing damages in construction contract cases involving "no damages for delay" clauses, which bar a party from recovering damages caused by the breaching party's "delay" in performing its contractual responsibilities. Instead, courts hold that disruption damages caused by the breaching party's delay are also barred by the "no damages for delay" clause. *See, e.g., Quinn Constr., Inc. v. Skanska USA Bldg., Inc.,* 730 F.Supp.2d 401, 411 (E.D.Pa.2010) ("No dam-

## (2) "Direct"

 Section 262.007 waives immunity for claims for "the increased cost to perform the work as a *direct result* of owner-caused delays or acceleration." TEX. LOC. GOV'T CODE ANN. § 262.007(b)(1) (emphasis added). A cost is a "direct result" of a delay if it is "the necessary and usual result of the defendant's wrongful act." *Zachry*, 449 S.W.3d at 111; *see Cherokee Cty. Cogeneration Partners v. Dynegy Mktg. & Trade*, 305 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("Direct damages ... compensate the plaintiff for a loss that is conclusively presumed to have been foreseen by the defendant as a usual and necessary consequence of its wrongdoing").

The record here is not developed enough for us to determine whether each of the parts of the damages that Triple B alleges are a "direct result" of the County's delay. *See City of Houston v. S. Elec. Servs.*, 273 S.W.3d 739, 744 (Tex.App.—Houston [1st Dist.] 2008, pet. denied) (parsing through each of plaintiff's claims to determine whether it fell under contract was unnecessary to establish jurisdiction existed). Instead, we must "construe the pleadings liberally in favor of the plaintiff and determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* Even if a part of the claim may fail after the record is developed, we cannot "deprive the trial court of jurisdiction to hear it—or in the Legislature's own words, 'adjudicate' it." *Id.*

 Based on the limited record before us, at least some of Triple B's alleged damages appear to be the direct result of the County's delay in moving the utilities, such as its additional costs to hand-form manholes, set and reset barricades, and incur additional labor, equipment, street cleaning, flagging, and traffic control. Immunity is waived for those damages. But some of Triple B's damages do not appear to be costs that were directly caused by the County's delay—for example, Triple B's damages model includes lost profits, which are a typical example of a non-direct, consequential damage and, thus, are not a cost incurred by Triple B as a direct result of the County's delay. *See Tooke*, 197 S.W.3d at 346. Immunity is not waived for those damages.

### (3) "Under the contract"

In interpreting the phrase, "under the contract," *Zachry* holds that the local government statute "waives immunity for a contract claim for delay damages *not expressly provided for in the contract.*" 449 S.W.3d at 114 (emphasis added). The phrase "the balance due and owed under the contract" means "the amount of damages for breach of contract payable and unpaid." *Id.* at 111 (internal ellipses omit-

---

ages for delay clauses are generally enforceable to bar delay and disruption claims"); *The Law Co. v. Mohawk Constr. & Supply Co.*, 523 F.Supp.2d 1276, 1285–86 (D.Kan.2007) *rev'd on other grounds by* 577 F.3d 1164 (10th Cir.2009) (holding that contract's sole remedy of "schedule extension" for contractor's delays barred subcontractor's claim for disruption damages); *U.S. ex rel. Tennessee Valley Marble Holding Co. v. Grunley Const.*, 433 F.Supp.2d 104, 109–11 (D.D.C.2006) (holding that contractual provision allowing "damages for delays recovered on [Supplier's] behalf by the Contractor from the Owner" barred disruption damages because "the ordinary meaning of the word 'delay'" encompasses disruption damages that are caused by other party's late performance); *but see Bell BCI Co. v. United States*, 72 Fed.Cl. 164, 169 (Fed. Cl.2006) (holding that contract releasing party from all damages "for all delays resulting from any and all Government changes" did not bar disruption damages as matter of law because fact issue existed on whether parties intended contract to cover disruption damages).

ted). "Nothing in the [statute] suggests that recoverable damages must be stated in the contract." *Id.* at 112. Thus, Triple B may allege any damages "for the increased cost to perform the work as a direct result of [the County's] delays'. . . ." regardless of whether those damages are expressly addressed in the contract.[4] TEX. LOC. GOV'T CODE ANN. § 262.007(b)(1).

Nonetheless, based on the limited record before us, the County and Triple B's contract appears to provide for at least some of the damages Triple B claims. The contract allows damages "when impacts that are the responsibility of [the County] result in additional costs to the contractor that could not have been reasonably anticipated at the time of letting." The contract allows Triple B to recover damages for additional "labor burden," "project overhead labor and direct labor," "standby costs," and equipment-related costs. Thus, Triple B alleges at least some damages, like its additional labor, equipment, street cleaning, flagging, and traffic control costs, that fit both under the contract at issue and "under the contract" as interpreted by *Zachry*.

### 2. *Zachry* does not dictate a different result

The County argues the distinction between delay and disruption damages is significant because the Texas Supreme Court in *Zachry* held that an identical statute waiving immunity for breach-of-construction-contract claims against government entities that are not counties only allows recovery of delay damages. *Zachry* holds, in relevant part, that the iden-

tical waiver statute allows "recovery of contract damages, including delay damages, but excluding other consequential damages." 449 S.W.3d at 112. But *Zachry* did not address the issue presented here of whether disruption damages fall within the statutory waiver of immunity. Thus, *Zachry* does not hold that the plain text of the statute, allowing recovery of "any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration," only allows delay damages. *See id.* at 106. Moreover, *Zachry* does not limit contractual damages to delay damages; it "includes" delay damages as part of the "balance due and owed . . . . under the contract." TEX. LOC. GOV'T CODE ANN. § 262.007(b).

We overrule the County's first issue and hold that Triple B's claims for disruption damages[5] are within the waiver of immunity from suit in Section 262.007.

### Sovereign Immunity Waived for Prompt Payment Act Claim

 The County argues that, in the event we hold that sovereign immunity is waived for the breach-of-contract claim, sovereign immunity is not waived for Triple B's claims under the Texas Prompt Payment Act (PPA).

Texas enacted the PPA five years after Congress enacted its federal counterpart. *See* Act of September 1, 1993, 73d Leg., R.S., ch. 268 § 1, 1993 Tex. Gen. Laws 843, 843–846 (codified at TEX. GOV'T CODE ANN.

---

**4.** Contrary to the County's assertion at oral argument that Triple B is required to point to a specific contractual provision allowing disruption damages, the County agreed with our reading of *Zachry* in its plea to the jurisdiction: "The Texas Supreme Court has rejected the argument that the phrase 'balance due and owed under the contract' only applies to

the amount of payment expressly called for in the contract rather than the measure of damages owed."

**5.** Its claims for consequential damages are not within the statutory waiver, as explained above.

§§ 2251.001–.055 (West 2016)); 31 U.S.C.S. §§ 3901–3907 (2003). Congress enacted the federal Prompt Payment Act, which requires government entities to pay contractors within 30 days of the contractor's invoice, in response to a GAO report that found that government entities had been paying invoices late about 30% of the time. *See* 31 U.S.C. §§ 3901–3907; BRUNER & O'CONNOR, 3 CONSTRUCTION LAW § 8.56. Much of the Texas PPA mirrors the federal law.

■ The Texas PPA applies solely to contracts between a vendor and a government entity or a vendor "who supplies goods or a service to a governmental entity [including a county] or another person directed by the entity" and its subcontractor. *See* TEX. GOV'T CODE ANN. §§ 2251.001–.055.[6] It does not "create an independent obligation to pay monies not otherwise owed under the contract. . . ." *Billy Smith Enters. v. Hutchison Construction, Inc.*, 261 S.W.3d 370, 376 (Tex. App.—Austin 2008, pet. dism'd) (internal brackets omitted). The PPA provides that a government entity's payment is "overdue on the 31st day after the later of" the date: (1) it "receives the goods under the contract"; (2) "performance of the service under the contract is completed"; or (3) it "receives an invoice for the goods or service." TEX. GOV'T CODE ANN. § 2251.021(a).

Interest under the PPA compensates the injured party at a higher rate than normal prejudgment interest in two ways. First, the payment "begins to accrue interest on the date the payment becomes overdue" whereas prejudgment interest under the Finance Code does not begin accruing until "the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed. . . ."

TEX. GOV'T CODE ANN. § 2251.025(a); TEX. FIN.CODE ANN. § 304.104 (West 2006)

Second, the PPA establishes a higher interest rate than the prejudgment interest under the Finance Code. The Finance Code's prejudgment interest rate is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation." TEX. FIN. CODE ANN. § 304.003(c)(1) (West 2006); *see* TEX. FIN.CODE ANN. § 304.103 (West 2006) ("The prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of judgment"); *see also* TEX. GOV'T CODE ANN. § 2260.106 (West 2016) (allowing recovery of prejudgment interest for breach-of-contract claim against state government). The interest rate under the PPA is "equal to the sum of one percent and the prime rate as published in the Wall Street Journal on the first day of July of the preceding fiscal year that does not fall on a Saturday or Sunday." TEX. GOV'T CODE ANN. § 2251.025(b).

The PPA requires interest on late payments by "political subdivision[s]," including counties. *See* TEX. GOV'T CODE ANN. § 2251.001, *Id.* at § 2251.027. A county "shall pay the interest at the time payment is made on the principal" and "shall submit the interest payment with the net amount due for the goods or service." TEX. GOV'T CODE ANN. §§ 2251.027(b) & (c). Section 262.007 waives immunity for claims for "interest as allowed by law." TEX. LOC. GOV'T CODE ANN. § 262.007(b)(4). A county is not allowed to "require a vendor or subcontractor to agree to waive [its] right to interest under this chapter as a condition of the contract between the parties." *Id.* at § 2251.027(e).

In interpreting a statute, "[w]e must enforce the statute as written and refrain from rewriting text that lawmakers chose."

---

6. A separate statute, also entitled the "Prompt Payment Act" contains similar requirements for non-government contracts. *See* TEX. PROP. CODE ANN. § 28.001–.010 (West 2014).

*Jaster,* 438 S.W.3d at 562. We must "apply the plain meaning of those words unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id.* at 562 (internal quotation marks omitted).

Based on the plain text of Section 262.007, a county may be sued for late payment and "interest as allowed by law." *See* Tex. Loc. Gov't Code Ann. § 262.007(b)(4). Because the PPA allows a contractor to recover interest from a county for late payment, the interest sought by Triple B is "interest allowed by law"—namely, allowed by the PPA—for which immunity is waived.

The County cites several cases to support its argument that immunity is not waived unless the PPA itself contains an express waiver. *See e.g., City of Midland v. M.T.D. Envtl., L.L.P.,* 429 S.W.3d 800, 806 (Tex.App.—Eastland 2014, no pet.); *City of San Antonio v. KGME, Inc.,* 340 S.W.3d 870, 877–78 (Tex.App.—San Antonio 2011, no pet.); *Harris Cty. Flood Control Dist. v. Great Am. Ins. Co.,* 309 S.W.3d 614, 618 (Tex.App.—Houston [14th Dist.] 2010, pet. denied); *McMahon Contracting, L.P. v. City of Carrollton,* 277 S.W.3d 458, 465 (Tex.App.—Dallas 2009, pet. denied). Those cases interpreted the statute waiving immunity for non-county local government entities, which, prior to a 2011 amendment, was identical to the statute waiving immunity for counties. *Compare* Tex. Loc. Gov't Code Ann. § 262.007(b)(4) (waiving immunity for counties and allowing claims for "interest as allowed by law") *with* Tex. Loc. Gov't Code Ann. § 271.153(a)(3) (West 2008) (same but in context of non-county local government entities).

Under those cases, the courts held that the words "interest as allowed by law" in the waiver statute were not a clear and unambiguous waiver of immunity. *See e.g.*

*M.T.D.,* 429 S.W.3d at 805. According to those cases, the "as allowed by law" language required the other law—the Prompt Payment Act—to waive immunity because, without such a waiver, the interest was not "allowed by law." *Id.* at 805–06. In response to that line of cases, the Legislature changed the statute authorizing breach-of-construction-contract claims against local government entities (but not the statute applicable to counties) to add the following italicized language and allow recovery of "interest as allowed by law, *including interest as calculated under [the Prompt Payment Act]." Compare* Tex. Loc. Gov't Code Ann. § 271.153 (West Supp.2015) (emphasis added) (other local government entities) *with* Tex. Loc. Gov't Code Ann. § 262.007(b)(4) (counties).

We do not find *M.T.D.* or that line of cases persuasive. As we explained above, the plain language of Section 262.007 waives immunity for "interest as allowed by law" and interest under the PPA is "allowed by law."

The County argues that the Legislature—by amending only the local government statute and not the county statute to specifically refer to interest under the PPA—indicated its attention that counties retain immunity from interest under the PPA. But the Legislature's amendment could also be read as clarifying the statute in light of case authority holding to the contrary. The new statute waives immunity for "interest as allowed by law, *including* interest as calculated under [the Prompt Payment Act]." Tex. Loc. Gov't Code Ann. § 271.153 (emphasis added). The word "including" precedes a "list . . . for purposes of illustration"—it does not suggest a limitation. *See Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 26 (Tex.App.—Tyler 2000, pet. denied). We could read the amendment to *illustrate* an example of interest that was already al-

lowed under the previous version of the statute. Thus, we do not view the amendment as decisive.

We conclude that the County's immunity is waived for Triple B's claims under the Prompt Payment Act. We overrule the County's second issue.

### Triple B Did Not Plead Statute Allowing Recovery of Attorney's Fees

The County argues that "Triple B has not [pleaded] or identified a valid statute or contract provision supporting an award of attorney's fees" or "prejudgment interest." Although it acknowledges Section 262.007 waives immunity for attorney's fees in breach-of-construction-contract claims against a county, it contends that this statute "only opens the door to an attorney's fee claim, but does not form the substantive basis for the claim." *See* TEX. LOC. GOV'T CODE ANN. § 262.007(d). Triple B responds that the County's argument "is more properly the subject of a Motion for Summary Judgment which has not been filed."

We reject Triple B's procedural argument. "A governmental entity's immunity from a request for attorney's fees is properly litigated through a plea to the jurisdiction." *City of Willow Park, Tex. v. E.S.*, 424 S.W.3d 702, 711 (Tex.App.—Fort Worth 2014, pet. denied). Therefore, the question of whether the County is immune from Triple B's claim for attorney's fees is properly before us.

Triple B pleaded two statutes, Section 38.001 of the Civil Practices and Remedies Code and Section 262.007(b)(3) of the Local Government Code, as a basis for its attorney's fees claim.[7] It cannot, however, recover attorney's fees under Section 38.001 because, under that statute, the plaintiff must sue an "individual" or a "corporation," and cannot recover against a county. *City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 370 (Tex.App.—Fort Worth 2009, no pet.); *Texas A & M Univ.-Kingsville v. Lawson*, 127 S.W.3d 866, 874 (Tex.App.—Austin 2004, pet. denied).

■ Section 262.007 waives immunity for "reasonable and necessary attorney's fees that are equitable and just." TEX. LOC. GOV'T CODE ANN. § 262.007(b)(3). This provision, however, does not serve as a substantive basis for attorney's fees; it only allows attorney's fees if another statute—or the contract—allows attorney's fees.[8]

The plain language of Section 262.007 and *Zachry's* interpretation of the similar local government statute support our conclusion that the statute is a waiver of immunity and not a basis for a substantive claim for attorney's fees. The provisions

---

7. The PPA allows for recovery of "reasonable attorneys fees of the prevailing party" for a "formal administrative or judicial action to collect an invoice payment or interest due" under that law. TEX. GOV'T CODE ANN. § 2251.043. Because Triple B did not plead the PPA as a source for attorney's fees, we do not address whether it could have received attorney's fees under that statute.

8. The parties do not point us to, nor can we find, Texas case law interpreting whether Section 262.007 merely waives immunity for attorney's fees or whether it creates a substan-

tive right to attorney's fees. The Fort Worth court, without analysis, stated that identical language in a different statute "added the possibility of recovering attorney's fees" in such a claim. *City of Willow Park*, 424 S.W.3d at 712. But that case also held that the previous version of statute, which governed contract at issue in that case, precluded attorney's fees for contracts that did not explicitly provide for attorney's fees. *Id.* We decline to follow the dicta in *City of Willow Park*, especially because no analysis supported it.

in the statute support our conclusion. First, the statute itself limits its application solely to waiving immunity; it "does not waive a defense or a limitation on damages available to a party to a contract, other than a bar against suit based on sovereign immunity." TEX. LOC. GOV'T CODE ANN. § 262.007(d). Second, this section does not state that a party suing the county "may recover" reasonable attorney's fees; instead, under the subsection of the statute waiving immunity for attorney's fees, it states that "[t]he total amount of money recoverable from a county on a claim of breach of the contract *is limited to* the following . . . reasonable and necessary attorney's fees that are equitable and just." *Id.* at § 262.007(b)(3). This text limits the waiver of immunity for attorney-fee claims against a county to the recovery of attorney's fees that are "reasonable and necessary" and "equitable and just"; it does not create a right to those fees.

Additionally, *Zachry* interpreted Section 262.007 as a waiver of immunity. It reasoned that the language in the local government statute "refers to 'waives', thus making the provisions of the Act limitations on the waiver of immunity." *Zachry*, 449 S.W.3d at 108. The statute "waives immunity for contract claims that meet certain conditions" and merely defines "to what extent immunity has been waived." *Id.* at 109–110. Thus, the statute does not create the entitlement to recovery from the County.

Neither statute Triple B referenced as its basis for attorney's fees creates a substantive right to recover attorney's fees from the County. Thus, we sustain the County's third issue and agree that Triple B is not currently asserting an attorney's fee claim for which immunity has been waived.

## Conclusion

We affirm the trial court's order as to Triple B's breach-of-contract claim and claim for interest under the Prompt Payment Act. We reverse the trial court's order on Triple B's attorney's fee claim, having concluded that Triple B is not asserting an attorney's fee claim for which immunity has been waived.