**Opinion issued December 1, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-19-00395-CV**

———————————

**TEXAS SOUTHERN UNIVERSITY, Appellant**

**V.**

**PEPPER LAWSON HORIZON INTERNATIONAL GROUP, LLC, Appellee**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-32362**

---

# O P I N I O N

In this interlocutory appeal,[1] appellant, Texas Southern University ("TSU"),

challenges the trial court's order denying its first amended plea to the jurisdiction

---

[1]      *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

filed in the suit brought against it by appellee, Pepper Lawson Horizon International Group, LLC ("PLH"), for breach of contract under Texas Civil Practice and Remedies Code Chapter 114[2] and for violation of the Texas Prompt Payment Act ("PPA").[3] In three issues, TSU contends that that the trial court lacks subject-matter jurisdiction over PLH's claims.

We reverse and render.

## Background

In its second amended petition, PLH alleged that in February 2014, TSU awarded PLH a contract[4] for the construction of a new student housing project (the "Project") for a fixed price of $41,500,000. PLH agreed to substantial completion of its work by July 1, 2015, and final completion of its work by August 31, 2015, "subject to justified time extensions and equitable adjustments to the contract price for delays outside of PLH's control."

Shortly after beginning work on the Project, while drilling piers for the foundation, PLH discovered that a previous building situated at the worksite had not been fully demolished; instead, remnants of that building were buried beneath the

---

[2]     *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 114.001–.013.

[3]     *See* TEX. GOV'T CODE ANN. §§ 2251.001–.055.

[4]     The parties' contract is comprised of four parts:  (1) the Owner-Contractor Agreement, (2) the Uniform General Conditions ("UGC"), (3) TSU's Supplemental General Conditions ("SGC"), which modify the UGC, and (4) the change orders executed during the Project.

2

worksite and obstructed progress on the Project. TSU agreed to a cost increase to the parties' contract for removal of the obstructions but denied PLH's request for additional time to perform the work. Exploratory work and removal of the larger obstructions diverted manpower and resources, causing delays to the scheduled work, and causing the Project to get out of sequence.

PLH further alleged that the delays pushed the Project into the Texas "wet season." May 2015 was a record month for rainfall in Texas, and the year 2015 had the highest recorded rainfall of any year in Texas history. The heavy rains "debilitated PLH's ability to move forward and progress the Project as planned." Specifically, because the wet season commenced when the structure was still in its early stages and the windows had not yet been installed, PLH had to pump water and use other measures to try to dry out the Project site. The heavy rains reduced the number of days that construction could progress. PLH requested a sixty-seven-day extension for rain days under the parties' contract. TSU agreed to a twenty-one-day extension, rejecting forty-six of PLH's requested days.

PLH also alleged that TSU failed to timely provide permanent power to the Project site. According to PLH, TSU agreed to provide PLH with permanent power "on or before December 12, 2014," but TSU did not actually do so until August 6, 2015—192 days later. The delay "prevented PLH from beginning startup of mechanical equipment, energizing electrical panels, starting installation of elevators

3

and hoists, providing controlled air, and commencing installation of planned finishes," and it caused PLH to incur additional work costs and unplanned, temporary power expenses. It also required PLH to install more expensive moisture-resistant drywall because of the inability to operate climate control in the structure. PLH requested a 192-day extension under the parties' contract based on the "excusable delay" provision, but TSU denied the request. In addition, PLH alleged that various other issues caused cost increases, including defective carton forms and design plans.

On or about February 2016, PLH completed the Project and purportedly satisfied its obligations to TSU under the parties' contract. PLH invoiced TSU for the remaining balance it believed it was owed under the contract, but according to PLH, TSU wrongfully withheld payment.[5]

PLH brought a breach-of-contract claim against TSU,[6] asserting that TSU breached the parties' contract by failing to pay PLH and by failing to accommodate reasonable delays. According to PLH, TSU breached "[UGC] sections 9.6.2.2,

---

[5] In certain filings in the trial court, TSU alleged that the parties' contract required substantial completion of the Project by September 13, 2015, but PLH did not substantially complete the Project until March 4, 2016. Prior to PLH initiating its suit, TSU exercised its contractual right to assess liquidated damages of $3,100,000 for PLH's 155-day delay in achieving substantial completion.

[6] See TEX. CIV. PRAC. & REM. CODE ANN. §§ 114.001–.013.

4

9.6.3, and 9.9.4.2" of the parties' contract "by failing to equitably adjust the contract as required by the parties' agreement."

PLH also brought a claim against TSU for violation of the PPA, asserting that TSU was statutorily obligated to pay PLH's bills "within thirty (30) days of receipt of an invoice for the goods or services provided to it" and TSU failed to pay PLH's final billings. This entitled PLH to statutory penalty interest "on its unpaid invoices beginning on the first day the balance became overdue."

For its claims, PLH sought to recover from TSU $3,320,605 for the balance of the parties' contract, retainage, and agreed change orders, $3,677,580 for additional costs incurred, statutory penalty interest, attorney's fees, and post-judgment interest.

TSU answered, generally denying the allegations in PLH's petition and asserting various defenses. Pertinent here, it asserted that the trial court "lacks jurisdiction because sovereign immunity ha[d] not been waived for [PLH's] claims."

In its first amended plea to the jurisdiction, TSU asserted that the trial court lacks subject-matter jurisdiction over PLH's suit against TSU because sovereign immunity bars PLH's claims and there had been no waiver of immunity.[7] According

---

[7] *See City of Sugar Land v. Gaytan*, No. 01-18-01083-CV, 2020 WL 2026374, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2020, no pet.) (mem. op.) ("Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. . . . [S]overeign immunity extends to various divisions of state

5

to TSU, as to PLH's breach-of-contract claim, Texas Civil Practice and Remedies Code Chapter 114 provides a limited waiver of sovereign immunity when a state agency has entered into a contract and a claim is brought against the state agency for breach of an express provision of that contract.[8] Thus, for PLH to plead a clear and unambiguous waiver of immunity so that the trial court has subject-matter jurisdiction over its breach-of-contract claim, PLH must show a breach of an express provision of the parties' contract. But PLH, in its second amended petition failed to do so.

Specifically, in regard to PLH's allegation that TSU breached a duty to inform PLH of underground obstructions and delayed PLH's access to the Project site, PLH failed to invoke an express provision of the parties' contract or acknowledge the existing contractual provision declaring that "[TSU] ma[de] no representation as to accuracy or completeness of the site information furnished to [PLH] by [TSU], and [was] not responsible for any interpretation or conclusions reached by [PLH] with respect to the information." And as to PLH's allegation that TSU breached the parties' contract by "improperly delay[ing] inspection[s]," "insist[ing] on higher

---

government, including agencies, boards, hospitals, and universities . . . ." (internal quotations omitted) (internal citations omitted)); *Tex. S. Univ. v. Araserve Campus Dining Servs. of Tex., Inc.*, 981 S.W.2d 929, 930 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (TSU entitled to sovereign immunity).

[8] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 114.003 ("Waiver of Immunity to Suit for Certain Claims").

6

quality finishes," and by its other contractor causing Project delays, PLH failed to point to any express provision of the parties' contract that TSU allegedly breached.

Further, as to PLH's allegation that TSU breached the parties' contract by "fail[ing] to apply weather days to contract time," PLH, in its second amended petition, failed to plead a cognizable Chapter 114 claim because it did not show that it had "met the conditions precedent to requesting [a] time extension as required" by the parties' contract. And without a cognizable Chapter 114 claim, sovereign immunity cannot be waived. Finally, in regard to PLH's allegation that TSU breached the parties' contract by refusing to "equitably adjust the contract time and price for PLH's excusable delays and weather delays," PLH failed to "point to any contractual provision that expressly allow[ed] recovery for owner-caused delays."

As to PLH's claim for violation of the PPA, TSU asserted that the PPA does not waive sovereign immunity for such a claim.

After PLH responded to TSU's first amended plea to the jurisdiction, the trial court, in an interlocutory order, denied TSU's first amended plea to the jurisdiction.

**Standard of Review**

"A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Villarreal v. Harris Cty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We review de novo a trial court's ruling on a jurisdictional

plea. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006); *City of Houston v. Vallejo*, 371 S.W.3d 499, 501 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A defendant may use a plea to the jurisdiction to challenge whether the plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

When a plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* at 226. We construe the pleadings liberally in favor of the pleader, accept all factual allegations as true, and look to the pleader's intent. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). If the pleadings are insufficient, the court should afford an opportunity to replead if the defects are potentially curable but may dismiss if the pleadings affirmatively negate the existence of jurisdiction. *City of Houston v. Guthrie*, 332 S.W.3d 578, 586–87 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Review of a plea challenging the existence of jurisdictional facts mirrors that of a matter-of-law summary-judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228 ("[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil

Procedure 166a(c). . . . By requiring the [S]tate to meet the summary judgment standard of proof . . . , we protect the plaintiff[] from having to put on [its] case simply to establish jurisdiction.") (internal quotations omitted) (internal citations omitted)); *see also* TEX. R. CIV. P. 166a(c). "[A] court deciding a plea to the jurisdiction . . . may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). And a court may consider evidence as necessary to resolve a dispute over the jurisdictional facts even if the evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226.

We take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* at 228. If the defendant meets its burden to establish that the trial court lacks jurisdiction, the plaintiff is then required to show that there is a material fact question regarding the jurisdictional issue. *Id.* at 227–28. If the evidence raises a fact issue about jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Id.* On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *Garcia*, 372 S.W.3d at 635.

9

## Plea to the Jurisdiction

In its first and second issues, TSU argues that the trial court erred in denying its first amended plea to the jurisdiction because neither the PPA nor Texas Civil Practice and Remedies Code Chapter 114 waives sovereign immunity in this case.

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Garcia*, 372 S.W.3d at 655; *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323–24 ("Sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages."). Although the terms "sovereign immunity" and "governmental immunity" are often used interchangeably, sovereign immunity "extends to various divisions of state government, including agencies, boards, hospitals, and universities," while governmental immunity "protects political subdivisions of the State, including counties, cities, and school districts." *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323–24; *see also Odutayo v. City of Houston*, No. 01-12-00132-CV, 2013 WL 1718334, at *2 n.8 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.); *Tex. S. Univ. v. Araserve Campus Dining Servs. of Tex., Inc.*, 981 S.W.2d 929, 930 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (TSU entitled to sovereign immunity). We interpret statutory waivers of

10

sovereign immunity narrowly, as the Texas Legislature's intent to waive immunity must be clear and unambiguous. *See LMV-AL Ventures, LLC v. Tex. Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 120 (Tex. App.—Austin 2017, pet. denied); *see also* TEX. GOV'T CODE ANN. § 311.034. Without an express waiver of sovereign immunity or governmental immunity, courts do not have subject-matter jurisdiction over suits against the State or its political subdivisions. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Miranda*, 133 S.W.3d at 224–25.

## A. PPA

In its first issue, TSU argues that the trial court erred in denying its first amended plea to the jurisdiction as to PLH's claim for violation of the PPA[9] because the PPA does not waive sovereign immunity in this case.

The PPA applies solely to contracts between a vendor and a governmental entity or a vendor "who supplies goods or a service to a governmental entity or another person directed by the entity" and its subcontractor. *See* TEX. GOV'T CODE ANN. §§ 2251.001(9), (10), 2251.023. It provides a remedy for a governmental entity's failure to make payment due by the thirtieth day after completion of performance under a contract, but "it does not create an independent obligation to pay monies not otherwise owed under the contract." *Cty. of Galveston v. Triple B*

---

[9]    PLH alleged in its second amended petition that it was entitled to statutory penalty interest and attorney's fees under the PPA.

11

*Servs., LLP*, 498 S.W.3d 176, 187 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (internal quotations omitted)); *see* TEX. GOV'T CODE ANN. § 2251.021(a).

In *Triple B*, this Court recognized that other Texas appellate courts have held that the PPA lacks its own waiver of immunity from suit. [10] *See Triple B Servs.*, 498 S.W.3d at 188. And in *Triple B*, this Court held that immunity was waived, not because of the PPA itself, but only because of a change to the Local Government Code authorizing the suit to include "'interest as calculated under the [PPA].'" *See id.* (quoting TEX. LOC. GOV'T CODE ANN. § 271.153).

PLH does not identify a separate statutory source outside of the PPA that allows a waiver of sovereign immunity for its claim against TSU for violation of the PPA. Thus, we hold that the PPA does not waive TSU's sovereign immunity related to PLH's claim for violation of the PPA and the trial court erred in denying TSU's first amended plea to the jurisdiction on PLH's claim under the PPA.

We sustain TSU's first issue.

---

[10] The cases include *City of Midland v. M.T.D. Environmental, L.L.P.*, 429 S.W.3d 800, 806 (Tex. App.—Eastland 2014, no pet.), *City of San Antonio v. KGME, Inc.*, 340 S.W.3d 870, 877–78 (Tex. App.—San Antonio 2011, no pet.), *Harris County Flood Control District v. Great American Insurance Co.*, 309 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), and *McMahon Contracting, L.P. v. City of Carrollton*, 277 S.W.3d 458, 465 (Tex. App.—Dallas 2009, pet. denied).

**B.    Chapter 114**

In its second issue, TSU argues that the trial court erred in denying its first amended plea to the jurisdiction as to PLH's claim for breach of contract because Texas Civil Practice and Remedies Code Chapter 114 does not waive sovereign immunity in this case.

"By entering into a contract, a governmental entity necessarily waives immunity from liability, . . . but it does not waive immunity from suit." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). A waiver of immunity from suit must be clear and unambiguous. *See* TEX. GOV'T CODE ANN. § 311.034; *Tooke*, 197 S.W.3d at 332–33.

Chapter 114 waives immunity from suits claiming "breach of an express provision" of a contract for engineering, architectural, or construction services and materials for an amount greater than $250,000. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 114.002–.003. Pertinent to this appeal, Chapter 114 states:

> (a) The total amount of money awarded in an adjudication brought against a state agency for breach of an express provision of a contract subject to this chapter is limited to the following:
>
>> (1) the balance due and owed by the state agency under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration if the contract expressly provides for that compensation[.]

*Id*. § 114.004(a)(1). Thus, to show a clear and unambiguous waiver of sovereign immunity under the parties' contract, PLH had the burden of alleging facts giving rise to a claim for breach of an express provision of the parties' contract.

In its second amended petition, PLH alleged that TSU breached "[UGC] sections 9.6.2.2, 9.6.3, and 9.9.4.2" by failing to equitably adjust the contract time for excusable delays, and other delays within TSU's reasonable control, including delaying PLH's access to the Project site, failing to timely provide power to the Project site, providing deficient design documents, and interfering with PLH's work on the Project. The contract sections relied on by PLH address "change orders," which the parties' contract defines as "written modification[s] of the [Project agreement] between [TSU] and [PLH], signed by [TSU], [PLH], and [the Architect/Engineer]." These sections entitled PLH to an equitable time adjustment "extend[ing] the number of days lost because of excusable delay or Weather Days." A "Weather Day" is defined as "a day on which [PLH]'s current schedule indicate[d] [w]ork [was] to be done, and on which inclement weather and related [Project] site conditions prevent[ed] [PLH] from performing seven (7) continuous hours of [w]ork between the hours of 7:00 a.m. and 6:00 p.m." To obtain an extension based on a weather delay, PLH was required to:

> [I]mmediately notify [the project manager] for confirmation of the conditions. [And] [a]t the end of each calendar month, submit to [the project manager] and [the architect/engineer] a list of Weather Days occurring in that month along with documentation of the impact on

14

critical activities.  Based on confirmation by [the project manager], any time extension granted w[ould] be issued by Change Order.

Under the parties' contract, non-weather-related excusable delays included:

- Errors, omissions and imperfections in design, which the architect/engineer corrects by means of changes in the drawings and specifications;

- Unanticipated physical conditions at the Project site, which the architect/engineer corrects by modifying the design or tasks identified in the contract documents;

- Changes in the work ordered by the project manager that affect tasks identified as "critical" to completion of the entire job;

- Suspension of work for unexpected natural events (sometimes called "acts of God"), civil unrest, strikes, or other events which are not within the contractor's reasonable control; and

- Suspension of work for convenience of the project manager, which prevented PLH from completing the job within the contract time.

Absent PLH's agreement, TSU could "issue a Unilateral Change Order that w[ould] have the full force and effect of a contract modification," but would "not prejudice [PLH]'s right to make claims or to appeal disputed matters under terms of the [parties'] [c]ontract."

UGC sections 9.6.2 and 9.9.4.2 address weather and other excusable delays. Section 9.6.2 provides:

When a delay defined herein as excusable prevents [PLH] from completing the [w]ork within the Contract Time, [PLH] is entitled to an extension of time.  [TSU] will make an equitable adjustment and extend the number of days lost because of excusable delay or Weather

15

Days, as measured by [PLH]'s progress schedule. All extensions of time will be granted in calendar days. In no event, however, will an extension of time be granted for delays that merely extend the duration of non-critical activities, or which only consume float without delaying the project's Substantial Completion date(s).

UGC section 9.7 addresses damages for delay. It provides that "[PLH] ha[d] no claim for monetary damages for delay or hindrances to the work from any cause, including without limitation any act or omission of the [TSU]." And UGC section 9.9 declares that it applies to "[t]ime extensions requested in association with changes to the Work Directed or requested by [TSU]," and not "[t]ime extensions requested for inclement weather," which "are covered by [section] 9.6.2.1 . . . ." Under section 9.9.4.2, PLH is entitled to the amount of time requested if TSU fails to respond to the request for extension of time "within forty-five (45) days from the date the Time Extension Request is received." No parallel automatic-approval mechanism exists for weather-related extension requests under section 9.6.2.1. For weather-related delays, if the parties "cannot agree on the time extension, [TSU] may issue a [unilateral change order] for [a] fair and reasonable time extension."

These provisions set forth the procedures for obtaining time extensions, but PLH does not allege in its second amended petition that TSU failed to comply with such procedures; rather, it disputes the results. And PLH's challenges do not concern any unilateral change orders, for which TSU could "make claims" or

16

"appeal disputed matters."[11] The change orders were executed by both parties and so, under the express terms of the parties' contract, constitute agreed-to contract modifications. Thus, PLH's allegations that TSU refused to extend time according to the amount PLH initially requested and that TSU refused to agree to a specific price increase in response to a change order request do not support a claim for breach of an express contract provision.

Likewise, PLH does not identify in its second amended petition any provision of the parties' contract that gave PLH the right to access the Project site by a specific date, that required TSU to provide power to the Project site by a specific date, that holds TSU responsible for inaccuracies in the design documents, or that required TSU to refrain from performing other activities at the Project site during construction. TSU, on the other hand, identified in its first amended plea to the jurisdiction the provisions of the parties' contract that disavowed any such rights or

---

[11]    In its appellate briefing, PLH appears to argue that it was automatically entitled to a 192-day extension for TSU's delay in providing power because TSU waived its objection to the extension request by failing to "timely respond." Its citation to the appellate record, though, does not support its argument. PLH cites only to the allegation in its second amended petition that, "[b]ased on the agreed contract schedule and sequencing, PLH was entitled to 192 days from the date permanent power was provided to achieve substantial completion. PLH requested an appropriate time and extension and TSU wrongfully rejected the request." Further, this argument does not appear in PLH's response to TSU's first amended plea to the jurisdiction. PLH's breach-of-contract claim concerns only TSU's refusal to grant the extension and not an alleged failure to follow the process required by the parties' contract.

17

duties. The parties' contract allocates the risk for the discovery of unknown conditions at the Project site. The SGC explains that "[TSU] ma[de] no representation as to accuracy or completeness of the site information furnished to [PLH] by [TSU] and [was] not responsible for any interpretations or conclusions reached by [PLH] with respect to the information." And the UGC declares that "[PLH] ha[d] no claim for monetary damages for delay or hindrances to the work from any cause, including without limitation any act or omission of [TSU]." As for any concealed Project site conditions, the UGC explains:

> [TSU] is responsible for visiting the [Project] [s]ite and being familiar with local conditions . . . . If, in the performance of the Contract, subsurface, latent, or concealed conditions at the [Project] [s]ite are found to be materially different from the information included in the Contract . . . , or if unknown conditions of an unusual nature are disclosed differing materially from the conditions usually inherent in [w]ork of the character shown and specified, ODR and A/E shall be notified in writing of such conditions before they are disturbed. Upon such notice, or upon its own observation of such conditions, A/E, with the approval of ODR, will promptly make such changes in the Drawings and Specifications as they deem necessary to conform to the different conditions, and any increase or decrease in the cost of the [w]ork, or in the time within which the [w]ork is to be completed, resulting from such changes will be adjusted by Change Order, subject to the prior approval of ODR.

These provisions preclude, as a matter of law, a conclusion that the parties' contract unambiguously waives TSU's immunity from suit for PLH's breach-of-contract claim based on alleged design deficiencies or TSU's interference. *See* TEX. GOV'T CODE ANN. § 311.034.

18

As to PLH's allegation that TSU breached the parties' contract by failing "to make payment of [PLH]'s contract and change order balance totaling $3,320.605," PLH relies on Article 6 of the Owner-Contractor agreement, which requires PLH to promptly pay all bills for labor and materials; provides procedures for PLH to apply for payment; allows TSU, as a state agency, to offset, deduct, or withhold payments based on various circumstances; and allows TSU to audit PLH's billings. This provision does not contain any express payment obligation that TSU allegedly breached.

Instead, the parties' contract disclaims any such obligation by TSU. The contract provides that "[TSU] ha[d] no duty to pay [PLH] except on receipt . . . of 1) a complete Application for Payment certified by [the architect/engineer]; 2) [PLH]'s updated Work Progress Schedule; and 3) confirmation that [PLH]'s record documentation at the [Project] [s]ite is kept current." Other contract provisions allowed TSU to reduce the price owed or withhold payments under certain conditions, and the parties' contract also required PLH to pay liquidated damages if the Project was not substantially completed by the due date, which occurred in this case. Because the provisions of the parties' contract that PLH relies on do not expressly require TSU to make the payment sought by PLH, PLH does not

state a claim for breach of an express contract provision for which TSU has waived immunity from suit.[12]

Because no express contract provision required TSU to perform as PLH alleged in its second amended petition, PLH has failed to show, as a matter of law, that Texas Civil Practice and Remedies Code Chapter 114 waives TSU's immunity from suit for PLH's breach-of-contract claim against it. *See Miranda*, 133 S.W.3d at 228. Thus, we hold the trial court erred in denying TSU's first amended plea to the jurisdiction on PLH's breach-of-contract claim.

We sustain TSU's second issue.

Because of our disposition of TSU's first and second issues, we need not reach TSU's third issue. *See* TEX. R. APP. P. 47.1.

---

[12] In its appellate briefing, PLH further argues that TSU waived immunity from suit for its claim for relief under the PPA because TSU agreed in the parties' contract to timely pay its bills "in accordance with" the PPA. But the parties' contract also declares that "[n]othing herein shall waive or be construed as a waiver of the State's sovereign immunity." The parties' contract arguably may constitute a waiver of immunity from liability, but not a waiver of immunity from suit. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

20

## Conclusion

We reverse the trial court's order denying TSU's first amended plea to the jurisdiction and render judgment dismissing the suit of PLH for lack of subject-matter jurisdiction.


Julie Countiss
Justice

Panel consists of Justices Kelly, Landau, and Countiss.

21