**CHEROKEE COUNTY COGENERATION PARTNERS, L.P., Appellant,**

v.

**DYNEGY MARKETING AND TRADE, Dynegy GP, Inc., DMT Holdings, L.P., DMT G.P., L.L.C., and Chevron U.S.A., Inc., Appellees.**

No. 14–08–00086–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 22, 2009.

12. *See supra* n. 4.

Edward Jason Dennis, Dallas, Angela Veronica Colmenero, Austin, for appellant.

David W. Jones, Russell S. Post, Houston, for appellees.

Panel consists of Chief Justice HEDGES, Justice SULLIVAN, and Senior Justice HUDSON.*

## OPINION

KENT C. SULLIVAN, Justice.

This commercial dispute arises from a natural-gas seller's failure to deliver an agreed quantity of gas to the purchaser, appellant Cherokee County Cogeneration Partners, L.P. ("Cherokee"). The seller, appellee Dynegy Marketing and Trade,[1]

successfully moved for summary judgment by arguing Cherokee seeks only consequential "lost profits" damages disclaimed by the parties' contract. We hold Cherokee has alleged compensable direct damages under the contract. Therefore, we reverse and remand.

## I.

## BACKGROUND

Pursuant to a take-or-pay Gas Purchase Agreement (the "Agreement"),[2] Dynegy must supply, and Cherokee must purchase, a fixed quantity of natural gas daily at an agreed-upon price that is identified in the Agreement as the "Commodity Charge." Under the Agreement, Cherokee may use the purchased gas at its discretion to fuel its cogeneration facility or resell the gas to third parties.

When Hurricanes Katrina and Rita struck the Gulf Coast in the fall of 2005, Dynegy declared *force majeure*. From August 29 through October 3, Dynegy did not supply the full contract amount of natural gas, which prompted Cherokee to operate its cogeneration facility in some diminished capacity. During that time, the market price of natural gas skyrocketed to an amount between five and ten times the Commodity Charge specified in the Agreement.

Cherokee demanded Dynegy support its *force majeure* declaration with the "full particulars" of its inability to perform. After Dynegy refused Cherokee's request to audit its financial records, Cherokee sued Dynegy for breach of contract and declaratory judgment. Cherokee alleged Dynegy

---

* Senior Justice J. Harvey Hudson sitting by assignment.

1. Appellees consist of Dynegy Marketing and Trade, Dynegy GP, Inc., DMT Holdings, L.P., DMT G.P., L.L.C., and Chevron U.S.A., Inc., to whom we collectively refer as "Dynegy."

2. The Agreement has been marked as "confidential." Therefore, we will discuss its terms only to the extent necessary to resolve the issues raised in this appeal.

could have performed its contract obligations but instead improperly declared *force majeure* to capitalize on the higher market price.[3]

In its petition, Cherokee pleaded damages according to a formula contained in Section 5.2 of the Agreement. Briefly, that provision identified Cherokee's breach-of-contract remedy, as to the undelivered natural gas, as the difference between the Commodity Charge and market price.

Dynegy moved for partial summary judgment on Cherokee's contract claims, contending Cherokee sought only "consequential" lost-profits damages—that is, the profits Cherokee might have earned by reselling gas to third parties—in violation of Section 5.4, which disclaims "consequential damages." The trial court granted Dynegy's motion for partial summary judgment,[4] which became final after Cherokee non-suited its remaining declaratory-judgment claims. Cherokee timely appealed.

## II.

### STANDARD OF REVIEW

We review the trial court's grant of Dynegy's traditional motion for summary judgment under well-established standards of review. *See Seidner v. Citibank (S.D.) N.A.*, 201 S.W.3d 332, 334 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). The summary-judgment movant must demonstrate the absence of a genuine issue of material fact entitling the movant to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). We re-

view the motion and evidence *de novo*, taking as true all evidence favorable to the nonmovant and resolving any doubts in its favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).

Our primary concern when interpreting a contract is to ascertain and give effect to the parties' intent. *Perry Homes v. Cull*, 258 S.W.3d 580, 606 (Tex.2008). We therefore focus on the language used in the contract because that is the best indication of the parties' intent. *See id.* We examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006). Therefore, we do not give controlling effect to any single provision; instead, we read all of the provisions in light of the entire agreement. *See id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). We may not rewrite the parties' contract or add to its language under the guise of interpretation. *Ramco Oil & Gas Ltd. v. Anglo–Dutch (Tenge) L.L.C.*, 207 S.W.3d 801, 815 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). Instead, we must enforce the agreement as written. *See id.*

## III.

### RELEVANT CONTRACT PROVISIONS

The parties' contract dispute centers on the following provisions in the Agreement:

**5.2. Seller's Failure to Make Gas Available.** If Seller fails, in whole or in part, to make available to Buyer the then-effective Nominated Purchase Quantity on any day, and if such failure

---

3. The merits of Dynegy's *force majeure* declaration are not before us in this appeal.

4. The trial court suggested the parties consider an interlocutory appeal in light of the sig-

nificance of its ruling, *see* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(d) (Vernon 2008), but Dynegy declined the offer.

is not excused by an event of force majeure or Buyer's failure to take gas nominated, Buyer's right to recover damages for such failure shall be limited to an amount equal to the shortfall in delivery from the Nominated Purchase Quantity, multiplied by the amount, if any, by which the Gas Daily Spot Price (hereinafter defined) exceeds the applicable Commodity Charge. Seller agrees to pay Buyer any damages to which Buyer is entitled under this Section 5.2, on or before the 10th day after Seller receives a written calculation of the amount of such damages from Buyer.

. . . .

**5.4. No Special Damages.** The remed[y] specified in Section[ ] . . . 5.2 above shall be the sole and exclusive remed[y] for . . . Seller's failure to deliver gas according to this Agreement. Neither party shall be liable in any event for consequential, incidental, special or punitive damages or losses which may be suffered by the other as a result of the failure to deliver . . . the required quantities of gas.[5]

The parties agree that, in the event Dynegy fails to deliver the full amount of contract gas, Section 5.2 prescribes Cherokee's sole remedy against Dynegy as the difference between their agreed-upon contract price and the prevailing market price for the undelivered gas. However, they disagree about the scope and effect of the language in Section 5.4 that disclaims "consequential damages."

Dynegy contends Section 5.4's proscription against "consequential damages" extends to any "lost profits" Cherokee might have realized by reselling gas to third parties at a higher market price. Thus, Dynegy claims Section 5.2 provides a remedy only if Cherokee suffered an actual out-of-pocket loss by purchasing "cover gas" at a higher price on the spot market.[6] Because it did not, Dynegy argues Cherokee has not suffered compensable damages and therefore has no remedy for Dynegy's alleged breach of contract.

Cherokee denies claiming consequential damages in its lawsuit. Instead, Cherokee insists it seeks only direct damages, that is, the market value of the gas not received,[7] according to the parties' agreed-upon formula set forth in Section 5.2. Further, Cherokee argues the Agreement contains no cover requirement—either express or implied—and is therefore governed by the Uniform Commercial Code, which permits an aggrieved party to choose between cover and damages for non-delivery of contract goods. *See* Tex. Bus. & Comm.Code Ann. §§ 2.711(a), 2.712(c), 2.712 cmt. 3 (Vernon 2009).

## IV.

## ANALYSIS

■ To decide whether Section 5.4 bars Cherokee's claim for damages, we first determine the scope of the contractual term "consequential damages." Because the Agreement does not define that term, we presume the parties intended its ordinary meaning. *See Intercont'l Group*

---

**5.** Capitalization normalized.

**6.** Thus, Dynegy contends the parties' Agreement supersedes the Uniform Commercial Code's cover provisions. *See* Tex. Bus. & Comm.Code Ann. § 2.719(a)(1), (c) (Vernon 2009) (permitting parties to contractually limit a party's remedies for breach).

**7.** *See First State Bank, N.A. v. Morse*, 227 S.W.3d 820, 829 n. 6 (Tex.App.-Amarillo 2007, no pet.) (noting, in the conversion context, that recovery of the fair market value of property constitutes "actual, as opposed to special, damages") (citing *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex.1997)).

*P'ship v. KB Home Loan Star L.P.*, 295 S.W.3d 650, 653 (Tex.2009) (citing *Valence Operating Co.*, 164 S.W.3d at 662). Here, we ascribe the meaning of "consequential damages" found in the common law. *See McMahan v. Greenwood*, 108 S.W.3d 467, 487 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

At common law, actual damages may be either "direct" or "consequential." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex.1997). Direct damages, which flow naturally and necessarily from a defendant's wrongful act, compensate the plaintiff for a loss that is conclusively presumed to have been foreseen by the defendant as a usual and necessary consequence of its wrongdoing. *See id.* By contrast, consequential damages "result naturally, but not necessarily, from the defendant's wrongful acts." *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex.1998) (quoting *Arthur Andersen*, 945 S.W.2d at 816).

The category of "consequential damages" may encompass some, but not all, claims for loss of profits and, in fact, Dynegy's argument necessarily depends upon its description of Cherokee's damages as "profits lost on other contracts," a label Cherokee eschews. "Lost profits" consist of damages for the loss of net income to a business. *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex.2002). Lost profits

may be classified as either direct or consequential damages, depending on their nature. *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex.App.-Dallas 2007, pet. denied); *Cont'l Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 475 (Tex.App.-Eastland 2003, no pet.); *Tenn. Gas Pipeline Co. v. Technip USA Corp.*, No. 01–06–00535–CV, 2008 WL 3876141, at *11 (Tex.App.-Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.). That is, profits lost on the contract itself—such as the amount a party would have received on the contract minus its saved expenses—are direct damages. *See Mood*, 245 S.W.3d at 12; *Leahy*, 132 S.W.3d at 475.

On the other hand, profits lost on other contracts or relationships resulting from the breach may be classified as "indirect" or consequential damages. *Mood*, 245 S.W.3d at 12; *Leahy*, 132 S.W.3d at 475. Stated differently, if "a party's expectation of profit is incidental to the performance of the contract, the loss of that expectancy is consequential." *Tenn. Gas Pipeline*, 2008 WL 3876141, at *11 (citing *Naegeli Transp. v. Gulf Electroquip, Inc.*, 853 S.W.2d 737, 739 (Tex.App.-Houston [14th Dist.] 1993, writ denied)).

Dynegy argues Cherokee's loss falls into the latter category.[8] Specifically, Dynegy contends Cherokee, by failing to cover, lost only the ability to resell gas to

---

**8.** Alternatively, Dynegy urges us to ignore the common-law distinction and declare *all* lost profits to be consequential damages. In support, Dynegy cites *Tooke v. City of Mexia*, in which the Texas Supreme Court rejected the Tookes' lost-profits claim because the Local Government Code expressly limited their breach-of-contract damages to the balance "due and owed" under the contract plus interest. *See Tooke*, 197 S.W.3d 325, 346 (Tex. 2006) ("[T]he Tookes do not claim damages within [section 271.153 of the Local Government Code]. Their only claim is for lost profits, which are consequential damages exclud-

ed from recovery under the statute."); *City of Houston v. Petrol. Traders Corp.*, 261 S.W.3d 350, 359 (Tex.App.-Houston [14th Dist.] 2008, rule 53.7(f) motion granted) ("Lost profits are consequential damages *under 271.153.*") (emphasis added). However, we decline to extend *Tooke* beyond the governmental-immunity context to eliminate the well-recognized distinction between profits lost on other contracts, which are consequential, and those lost on the contract itself, which are direct. *See Mood*, 245 S.W.3d at 12; *Leahy*, 132 S.W.3d at 475; *Hycel, Inc. v. Am. Airlines, Inc.*, 328 F.Supp. 190, 193–94 (S.D.Tex.1971).

third parties at a higher market price, which it characterizes as "profits lost on other contracts or relationships" and therefore consequential. *See Mood,* 245 S.W.3d at 12. We disagree because the damages Cherokee seeks to recover represent built-in profits lost on the Agreement itself.

The Agreement obligates Cherokee to purchase and entitles it to receive gas by paying an agreed-upon price—identified as the "Commodity Charge"—regardless of the current market price for natural gas. The parties also expressly agreed that Cherokee could then (1) use the purchased gas to fuel its cogeneration facility, *or* (2) resell the gas to a third party. The Agreement provides:

> **3.6. Right to Resell Gas[.]** *Nothing in this Agreement shall be construed to restrict Buyer's right to resell any gas purchased under this Agreement;* provided, however, that if Buyer (or Buyer's successor in interest) ceases to utilize this Agreement as the primary source of fuel for the Cogeneration Facility, Seller shall have the right to terminate this Agreement upon not less than sixty days' prior written notice to Buyer.[9]

In other words, the Agreement itself freely authorizes Cherokee to profit from increases in the market-price of natural gas,[10] by purchasing the commodity from Dynegy at the contract price and then reselling the purchased gas at a higher price.[11] Thus, any wrongful interference with that contractual right, including Dynegy's alleged breach, would naturally and necessarily cause Cherokee to suffer direct damages in the form of profits *on the Agreement itself.*[12] *See Arthur Andersen,* 945 S.W.2d at 816; *Mood,* 245 S.W.3d at 12; *Leahy,* 132 S.W.3d at 475.

Therefore, we hold Section 5.2, which permits Cherokee to recover the market value of the gas not delivered less the contract purchase price, provides a measure of direct, not consequential, damages. *See Frost Nat'l Bank v. Heafner,* 12 S.W.3d 104, 111 n. 5 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (describing "benefit of the bargain" damages as a measure of direct damages). In reaching this conclusion, we note the Uniform Commercial Code similarly identifies the remedy outlined in Section 5.2 as a measure of *direct* damages that may be recovered "together with" consequential damages:

---

9. Emphasis added.

10. *See Miga,* 96 S.W.3d at 213 ("[A]n increase in the market value of goods never delivered under a contract is not the same as lost profits.").

11. We therefore disagree with Dynegy's suggestion that Cherokee's *ability* to resell natural gas to a third party somehow transforms its benefit-of-the-bargain damages into "profits lost on other contracts or relationships." *See Mood,* 245 S.W.3d at 12. By definition, establishing the market value of undelivered property, as is contemplated by Section 5.2, necessarily requires Cherokee to prove the price a willing buyer would pay to a willing seller. *See State v. Whataburger, Inc.,* 60 S.W.3d 256, 262 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *Nelson v. Najm,* 127 S.W.3d 170, 177 (Tex.App.-Houston [1st Dist.]

2003, pet. denied). Thus, the mere fact that an undelivered good *could have been resold* does not force the conclusion that a buyer who agreed to a consequential-damages disclaimer must always cover the seller's non-performance or be faced with no remedy at all for the seller's breach.

12. By contrast, Cherokee acknowledged during oral argument that any profits lost on its other contracts for the sale of electricity produced by its cogeneration facility would be consequential. *See Mood,* 245 S.W.3d at 12; *Tenn. Gas Pipeline,* 2008 WL 3876141, at *11 (holding gas pipeline suffered consequential damages when seller's failure to timely deliver purchased equipment prevented it from selling gas to its customers).

[T]he measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price *together with* [13] *any incidental and consequential damages* ... but less expenses saved in consequence of the seller's breach.

Tex. Bus. & Comm.Code Ann. § 2.713(a) (Vernon 2009) (emphasis added).

Thus, because the damages Cherokee seeks under Section 5.2 represent direct, not consequential damages, they are not disallowed by Section 5.4. Accordingly, Cherokee has pleaded compensable damages in its suit against Dynegy, and the trial court's summary judgment therefore must be reversed.

## V.

## CONCLUSION

We reverse the trial court's judgment and remand this case for additional proceedings not inconsistent with this opinion.

---

**13.** *See Harris v. Hines,* 137 S.W.3d 898, 906 n. 3 (Tex.App.-Texarkana 2004, no pet.) (noting the commonly understood meaning of the phrase "together with" is "in addition to").