**Reversed and Rendered and Memorandum Opinion filed September 5, 2024**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00818-CV

---

### HARRIS COUNTY, TEXAS, Appellant

### V.

### PULICE CONSTRUCTION, INC., Appellee

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-72776**

---

## M E M O R A N D U M   O P I N I O N

This is a construction dispute involving two contracts between appellant, Harris County, Texas, and appellee, Pulice Construction, Inc., to widen portions of the Sam Houston Tollway. Three years into the project, Pulice submitted change order requests seeking additional money and time due to delays allegedly caused by the County. After the County denied the change order requests, Pulice filed suit, asserting claims for breach of contract, quantum meruit, unjust enrichment, and interest under Section 2251.021 of the Texas Government Code. The County filed a

plea to the jurisdiction and traditional motion for summary judgment arguing that it was immune from Pulice's claims. Both motions were denied by the trial court. The County timely filed this interlocutory appeal challenging the denial of the plea to the jurisdiction. We reverse and render judgment dismissing Pulice's claims for want of subject matter jurisdiction.

### *Background*

In February 2016, the County contracted with Pulice in two separate construction contracts to widen the Sam Houston Tollway. Under the first contract, Contract 332, the County agreed to pay Pulice approximately $77 million to widen the Sam Houston Tollway about 4.5 miles from west of State Highway 288 to west of Wayside Drive (the 332 Project). Under the second contract, Contract 333, the County agreed to pay Pulice approximately $96 million to widen the Sam Houston Tollway about 6 miles from west of Wayside Drive to east of Beamer Road (the 333 Project). Both contracts specifically incorporated the Texas Department of Transportation Standard Specifications for Construction and Maintenance of Highways, Streets and Bridges (the TxDOT Standard Specifications). Additionally, both contracts modified certain provisions of the TxDOT Standard Specifications through special provisions. Completion of the projects were to be determined by five milestones.

In order to expand certain sections of the tollway, the contracts required that Pulice build 33 mechanically stabilized earth permanent retaining walls (MSE walls).[1] While Pulice completed construction of the MSE walls, it had to install soil nail walls, i.e., temporary shoring systems to support the existing embankments and maintain the flow of traffic along existing lanes. To construct the soil nail walls,

---

[1] An MSE wall is a retaining wall that consists of layers of compacted backfill and soil reinforcement elements, fixed to a wall facing (a concrete panel).

Pulice needed to (1) excavate and cut inclined vertical slopes; (2) drill and insert the excavated vertical slopes to reinforce the existing embankment; (3) add a layer of shotcrete to stabilize the vertical slope; (4) pour a concrete leveling pad; (5) install layers of concrete panels; and (6) continue alternating layers of backfill, reinforcing, and panels until reaching the full wall height.

In March 2016, the County issued its notice to proceed on the 332 and 333 Projects to Pulice. Adjacent to the 332 Project, Pulice also participated in a separate construction project on State Highway 288 (the SH 288 Project) commissioned by the Texas Department of Transportation (TxDOT). The 332 Project and the SH 288 Project were to be performed simultaneously. The County managed the 332 and 333 Projects, and TxDOT managed the SH 288 Project. The SH 288 Project was performed by Almeda Genoa Constructors (AGC). AGC is composed of various entities, including Pulice.

During the course of the projects, Pulice experienced significant delays. The parties dispute who was at fault for the delays. The County alleged that Pulice's method of temporary shoring failed to achieve the intended design purposes, which resulted in multiple soil nail wall failures. Pulice claimed that the delays were caused by design changes by the Harris County Toll Road Authority (HCTRA) to the MSE wall panels and soil nail walls, delays to concrete paving activities, access restrictions due to the SH 288 Project, and adverse weather conditions. Ultimately, the temporary shoring construction was completed by Pulice's subcontractor, Farr Foundation.

In March 2019, Pulice submitted a schedule delay analysis for events that occurred during March 2016 and January 2019. The purpose of the analysis was to identify delays and provide a summary of Pulice's entitlement to excusable and compensable extensions of time. In the analysis, Pulice stated that completion of the

3

first two milestones was delayed due to (1) design changes to the MSE walls by HCTRA, (2) design changes to the soil nail walls by HCTRA, and (3) conflicts with the SH 288 Project. As of January 2019, Pulice anticipated completion of Milestone 1 to be delayed by 493 days, and completion of Milestone 2 to be delayed by 15 days. After reviewing Pulice's analysis, the Engineer[2] denied Pulice's request, indicating that the analysis did not "conform with the Special Provision to Item 8 Prosecution and Progress or Item 4 Scope of Work."

In June 2019, Pulice submitted change order requests for the 332 and 333 Projects seeking compensation for additional costs associated with (1) changed conditions, (2) its performance of work under unforeseen circumstances, (3) the cumulative impact of changes in the work, (4) acceleration and disruptions of the work, and (5) resultant inefficiencies. In the requests, Pulice sought approximately $52 million and over a 600 calendar day extension of time to complete Milestones 1 and 2. The Engineer denied the change order requests. Pulice completed all work on the projects in June 2020 and presented the County with its request for final payment in August 2020. The County withheld amounts from Pulice for liquidated damages.

In November 2020, Pulice filed suit against the County and HCTRA, asserting claims for breach of contract, quantum meruit, unjust enrichment, and interest under section 2251.021 of the Texas Government Code. Pulice later nonsuited HCTRA. After completing discovery, the County filed a plea to the jurisdiction and motion for traditional summary judgment. The County's plea to the jurisdiction sought

---

[2] The Engineer was hired by the County to provide professional engineering services. The Engineer functioned solely and exclusively for the benefit of the County and not for the benefit of the contractors for the Projects or any other party. The Engineer had the authority to observe, test, inspect, approve, and accept the work. The Engineer also decided all questions about the quality and acceptability of materials, work performed, work progress, contract interpretations, and acceptable contract fulfillment. The Engineer acted as a referee in all questions arising under the terms of the contract, and his decision was final and binding.

dismissal of Pulice's claims for want of subject matter jurisdiction on the grounds of governmental immunity. The trial court entered an order denying the plea to the jurisdiction and motion for summary judgment. The County timely filed this interlocutory appeal of the trial court's denial of the plea to the jurisdiction.

In five issues, the County contends that it retained its governmental immunity against the claims asserted by Pulice. We will begin our analysis by setting forth the standard governing our review as well as the law governing governmental immunity. We will then turn to the issues presented in this appeal.

### *Standard of Review*

Before a trial court may decide a case, it is essential that the trial court possess subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). A plea to the jurisdiction is a dilatory plea and a proper method by which to challenge a trial court's subject matter jurisdiction. *Id.* at 554. A plea to the jurisdiction questioning the trial court's jurisdiction raises a question of law that we review de novo. *City of Hous. v. Collins*, 515 S.W.3d 467, 471 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The purpose of a plea to the jurisdiction is to defeat a pleaded cause of action without reaching the merits. *Blue*, 34 S.W.3d at 554. A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding the allegations of jurisdictional facts, or (2) an evidentiary challenge to the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Thus, the plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

5

When the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject matter jurisdiction and the merits of a claim. *Clark*, 544 S.W.3d at 770–71 (citing *Blue*, 34 S.W.3d at 555). In such cases, the standard of review for a plea to the jurisdiction "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Collins*, 515 S.W.3d at 471 (citing *Miranda*, 133 S.W.3d at 228).

Thus, if the plaintiff's factual allegations are challenged with supporting evidence that is necessary to the consideration of the plea, the plaintiff must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction and avoid dismissal. *Clark*, 544 S.W.3d at 771 (citing *Miranda*, 133 S.W.3d at 221). "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id.* (citing *Miranda*, 133 S.W.3d at 228). We cannot, however, disregard evidence that is necessary to show context; nor can we disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 811–12, 822–23, 827 (Tex. 2005)).

### Governmental Immunity

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State, its agencies, and its political subdivisions from lawsuits and liability for money damages. *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Governmental immunity is derived from the State's sovereign immunity. Therefore, the State's political subdivisions, which include units of local government, such as the County, are afforded the same immunity protections as the

State. *City of Hous. v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

Governmental immunity embraces two concepts: immunity from suit and immunity from liability. *Reata*, 197 S.W.3d at 374; *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity deprives a trial court of subject matter jurisdiction for actions in which certain governmental units have been sued unless the unit has expressly consented to suit. *Reata*, 197 S.W.3d at 374; *Miranda*, 133 S.W.3d at 224; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). On the other hand, immunity from liability is an affirmative defense, not a matter of subject matter jurisdiction; however, this immunity must also be waived. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Miranda*, 133 S.W.3d at 224. Because immunity from suit defeats a trial court's subject matter jurisdiction, it is properly raised in a plea to the jurisdiction. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022); *Miranda*, 133 S.W.3d at 225–26.

A plaintiff may overcome a governmental unit's immunity defense only if the plaintiff demonstrates that the legislature has clearly and unambiguously waived the unit's immunity by statute. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023); *Dohlen*, 643 S.W.3d at 392 (citing *Tooke*, 197 S.W.3d at 330). Without such a waiver, the trial court lacks subject matter jurisdiction to proceed, and the causes of action alleged against the governmental unit are barred. *Rattray*, 662 S.W.3d at 865. Accordingly, the trial court must dismiss the suit if the plaintiff cannot satisfy the burden of affirmatively demonstrating the trial court's subject matter jurisdiction to hear and decide the case by showing that the causes of action asserted by the plaintiff fall within a statutory waiver of immunity. *Id.*

### *Analysis*

As set forth above, the County raises five issues on appeal challenging the denial of the plea to the jurisdiction. As its first issue, the County alleges that the

7

trial court erred in denying the plea to the jurisdiction because the County is immune from equitable claims, such as quantum meruit and unjust enrichment. In its second issue, the County contends that the trial court erred in denying the plea to the jurisdiction regarding Pulice's claim for "owner-caused delays" because the delays complained of were not caused by the County. Under its third issue, the County maintains that the trial court erred in denying the plea to the jurisdiction regarding Pulice's claim for lost profits and loss of funds because such a claim is excluded from recovery under section 262.007 of the Texas Local Government Code. As its fourth issue, the County complains that the trial court erred in denying the plea to the jurisdiction because Pulice has no viable breach of contract claim given that the Engineer's decision to reject Pulice's claims made the basis of this lawsuit were final and binding, and there is no evidence of fraud, mistake, or bad faith. And, in its final issue, the County contends that Pulice waived any complaints relating to the MSE wall panels by executing agreed-to change orders. We address each of these issues in turn.

## I.     Quantum Meruit and Unjust Enrichment

As its first issue, the County argues that the plain language of section 262.007 does not apply to claims based on equitable or quasi-contractual theories because the statute only waives immunity for contract claims. Pulice acknowledges that its claims for quantum meruit and unjust enrichment are equitable theories, but, nonetheless, maintains that the statute applies to claims "arising under the contract." *See id.* § 262.007(a).

In resolving this issue, we need not look any further than the plain language of the statute. *See City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 261 (Tex. 2018) ("When a statute is clear and unambiguous . . . we do not resort to extrinsic interpretive aids, such as legislative history, 'because the statute's plain

language is the surest guide to the Legislature's intent.'") (quoting *Paxton v. City of Dall.*, 509 S.W.3d 247, 257 (Tex. 2017)). Under Section 262.007, the Legislature has provided a limited waiver of immunity for breach of contract construction lawsuits against a county. *See* Tex. Loc. Gov't Code § 262.007.

> The statute expressly states that

> [a] county that is a party to a written contract for engineering, architectural, or construction services or for goods related to engineering, architectural, or construction services may sue or be sued, plead or be impleaded, or defend or be defended on a claim arising under the contract.

*Id.* § 262.007(a). Read in context, the phrase "arising under the contract" relates to the written contract, which the county is a party to. Thus, the Legislature has not created a waiver of immunity under this statute for claims outside of breach of a written contract. *See id.*; *see also Zachry Const. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 112 (Tex. 2014) (explaining that the phrase "under the contract" is used to refer generally to damages available on a contract claim).

In this case, Pulice's claim for quantum meruit is not a contract claim arising under the written contract. Quantum meruit is an equitable remedy based upon an implied promise to pay for benefits received that does not arise out of a contract but is independent of it. *Ellis v. Reliant Energy Retail Servs., L.L.C.*, 418 S.W.3d 235, 255 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Quantum meruit implies a contract in circumstances where the parties neglected to form one, but equity nonetheless requires payment for beneficial services rendered and knowingly accepted. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). Consequently, "[a] party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished." *Id.*; *see also Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). Pulice's claim for quantum meruit is

9

inapplicable in this case because the parties executed a written contract covering the scope of the services to be provided. *See Kellogg*, 166 S.W.3d at 740.

Additionally, Pulice's claim for unjust enrichment is not a claim arising under the written contract. Unjust enrichment is an equitable principle that occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *See Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 112 (Tex. App.—Houston [1st Dist.] 2013, no pet.). However, when an express contract covers the subject matter of the dispute, generally there can be no recovery under a quasi-contract theory such as unjust enrichment. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). As with its claim for quantum meruit, Pulice's claim for unjust enrichment is not viable because there is a written contract that covers the subject matter of the dispute. *See id.*

We therefore conclude that claims for quantum meruit and unjust enrichment are equitable claims that do not arise under the written contract, and the Legislature has not created a waiver of immunity. *See* Tex. Loc. Gov't Code § 262.007(a). We sustain the County's first issue. *See Clark*, 544 S.W.3d at 771.

## II.    Owner-Caused Delays

In its second issue, the County asserts that it retained its governmental immunity against Pulice's claims for delays that were not owner-caused, specifically delays relating to the adjacent SH 288 Project and adverse weather conditions. *See* Tex. Loc. Gov't Code § 262.007(b)(1). Pulice counters that the Legislature's intent in the statute is to permit the recovery of delay damages if properly considered part of the balance due and owed, regardless of whether the damages are the direct result of owner-caused delays or acceleration. According to Pulice, it is the contract documents (and not section 262.007 of the Local Government Code) that bar any

claims for delays that are not owner-caused.

As stated, the plain language of the statute is the surest guide to the Legislature's intent. *See City of Richardson*, 539 S.W.3d at 261. And, we must "refrain from rewriting text that lawmakers chose." *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014). As written, section 262.007 limits damages to the balance due and owed by the county under the contract as it may have been amended. Tex. Loc. Gov't Code § 262.007(b)(1). The statute allows a claim for delay damages against a county if the delay damages directly result from the county's delay in performance of its contractual obligations. *Id.*; *see also Cty. of Galveston v. Triple B Servs., LLP*, 498 S.W.3d 176, 183 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Therefore, only amounts owed for delays caused by the owner are properly considered in the balance due and owed under the contract. *See* Tex. Loc. Gov't Code § 262.007(b)(1).

Based on the record, Pulice complained that its performance on both projects was impacted by access restrictions and obstructions arising from the SH 288 Project and adverse weather conditions. However, the disruptions that Pulice cites were not caused by the County. The SH 288 Project was performed under a separate contract between TxDOT and AGC. As mentioned, TxDOT managed the SH 288 Project; therefore, TxDOT is the "owner." *See id.* § 262.007(b)(1) (explaining that the increased cost to perform the work must be a direct result of *owner-caused* delays or acceleration). Any delays or disruptions caused by the SH 288 Project were not the direct result of the County's performance of its obligations under the contracts. *See id.* Additionally, the adverse weather conditions that Pulice complained of were not caused by the County. *See, e.g.*, *McWilliams v. Masteron*, 112 S.W.3d 314, 320 (Tex. App.—Amarillo 2003, no pet.) ("[A]n event may be considered an act of God when it is occasioned exclusively by the violence of nature."); *Gulf, C. & S.F. Ry.*

*Co. v. Tex. Star Flour Mills*, 143 S.W. 1179, 1182 (Tex. Civ. App.—Galveston 1912, no writ) (recognizing long-standing rule that one is not responsible for a loss caused by an act of God).

Accordingly, we conclude that the County retained its governmental immunity against Pulice's claims for delays that were not caused by the County. We sustain the County's second issue.

### III. Lost Profits and Loss of Use Damages

Under its third issue, the County contends that Pulice's claim for alleged lost profits and loss of use damages seeks consequential damages that are barred from recovery under section 262.007. According to Pulice, its claim for lost profits and loss of use damages seeks direct damages for work that it performed under the contract. We therefore must determine if the damages sought are direct damages—which are recoverable under the statute—or consequential damages—which are prohibited by the statute. *See* Tex. Loc. Gov't Code § 262.007(c)(1).

Under section 262.007, the damages available in a breach of contract suit against a county are limited to:

(1) the balance due and owed by the county under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work required to carry out the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law.

Tex. Loc. Gov't Code § 262.007(b). The statute prohibits certain other damages,

including consequential damages, except as allowed under subsection (b)(1). *Id.* § 262.007(c)(1); *see also Triple B*, 498 S.W.3d at 183.

Lost profits may be classified as either direct or consequential damages, depending on their nature. *Cherokee Cty. Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*, 305 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Profits lost on the contract itself are direct damages, whereas, profits lost resulting from a breach are consequential damages. *Id.* (citing *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied)). Loss of use damages are frequently, but not categorically, classified as consequential in nature. *See, e.g.*, *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Based on the record, Pulice's claim for lost profits and loss of use damages stem from the change order requests submitted for both projects in June 2019. In the change orders, Pulice requested approximately $52 million as compensation for additional costs incurred. The Engineer considered the change orders but ultimately denied the requests because Pulice failed to provide timely notice of the delays that impacted the projects. The damages that Pulice complains of are not profits lost on the contract but rather profits lost from an alleged breach, i.e., the Engineer's denial of the change order requests and the County's failure to pay the amount requested. *See Cherokee Cty.*, 305 S.W.3d at 314; *see also Powell Elec. Sys.*, 356 S.W.3d at 121. Therefore, Pulice's claims for lost profits and loss of use damages are consequential in nature and prohibited from recovery under the statute. *See* Tex. Loc. Gov't Code § 262.007(c)(1). To the extent that Pulice suggests that it is entitled to interest on its claim for loss of use damages, the interest sought is not "interest allowed by law" as contemplated by section 262.007 because the statute prohibits recovery of consequential damages. *See id.* § 262.007(b)(4), (c)(1). Because we

13

conclude that Pulice's claim for loss of use damages is consequential in nature, it cannot piggy back interest on a claim that is otherwise unrecoverable. *See id.* § 262.007(c)(1). Accordingly, we sustain the County's third issue.

## IV. Breach of Contract

In the fourth issue raised by the County, it alleges that the trial court erred in denying the jurisdictional plea because Pulice failed to assert a viable breach of contract claim. The County asserts that the Engineer's decision to reject Pulice's claims made the basis of the lawsuit was "final and binding." Pulice maintains that the Engineer's decision is not "truly final and binding" such that there is no relief available to a contractor.

A contract may require performance by one party to be subject to the satisfaction of the other party, or a designated third party such as an architect or engineer. *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 652–53 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The supreme court determined that there are two different standards for reviewing decisions under a contract's "satisfaction" provision. *Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477, 481 (Tex. 2002). The first standard— whether the decision was based on partiality, fraud, misconduct, or gross error— applies when parties to a contract agree to submit questions which may arise thereunder to the decision of the engineer, and the engineer's decision is final and conclusive (unless in making the decision, the engineer is guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment). *Id.* (citing *City of San Antonio v. McKenzie Constr. Co.*, 150 S.W.2d 989, 996 (1941)). The second review standard—whether the decision was "reasonable"—applies when the party to the contract has the ultimate authority to determine whether a satisfaction clause has been satisfied. *Id.*

14

As an initial matter, we must first determine which standard applies. The County argues that the first standard—whether the decision was based on partiality, fraud, misconduct, or gross error—applies because the Engineer's decision was "final and binding" on all parties. Pulice alleges that the second standard—whether the decision was "reasonable"—should apply because the Engineer who issued the denials of Pulice's claims operated as a representative of the County who's decision-making actions were "expressly intended to benefit only the County."

In *Jones Bros.*, the supreme court recognized that Texas courts applied the first standard in cases where the contract designated an engineer to determine whether some aspect of performance suffices under a satisfaction clause. 92 S.W.3d at 481 (citing cases). Here, the contracts between the County and Pulice vested the Engineer with authority to enforce and make effective decisions on "all questions about the quality and acceptability of materials, work performed, work progress, Contract interpretations, and acceptable Contract fulfillment." The supreme court also acknowledged that Texas courts applied the first standard even when the engineer was an employee of a party to the contract. *Id.* at 483. The record demonstrates that the Engineer was an independent contractor. Even if the Engineer was an employee of the County, the first standard would still apply because the Engineer's decision was binding on all parties. *See id.* at 482 (citing *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86–88 (Tex. 1976), *overruled in part on other grounds*, *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). We therefore review the Engineer's decision to deny Pulice's claims under the first standard.

Having determined the correct standard for review, we consider whether Pulice alleged and presented evidence showing that the Engineer was guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an

honest judgment. *See Jones Bros.*, 92 S.W.3d at 481; *see also City of Hou. v. James Constr. Grp., LLC*, No. 14-21-00322-CV, 2023 WL 3301739, at *5 (Tex. App.—Houston [14th Dist.] May 8, 2023, no pet.).

In this case, the record shows that the TxDOT Standard Specifications defined "contract" as the agreement between the County and Pulice establishing the obligations of the parties and performance of the work prescribed in the contract documents. The "contract documents" included plans, specifications incorporated by reference, special provisions, contract bonds, change orders, and supplemental agreements. Pursuant to the TxDOT Standard Specifications, the Engineer decided all questions about contract interpretations and acted as a referee in all questions arising under the terms of the contract, and the Engineer's decision was "final and binding." Additionally, the special provisions contemplated adjustments to the contract duration, completion date, and contract amount. Pursuant to the special provisions, the Engineer was to consider any adjustment for any changed condition or event which, in the sole opinion of the Engineer, was beyond the control of Pulice. Pulice was required to provide the Engineer with notice of any delay which could impact the project completion date or cost. Failure to provide timely written notice resulted in the denial of any request for adjustment to the contract duration, completion date, or contract amount.

Pulice submitted change order requests for both projects in June 2019. In the change order request for the 332 Project, Pulice requested an equitable adjustment to Contract 332 in the amount of $20,346,226.45, a 662 calendar day extension of time to the date of completion for Milestone 1, and a 68 calendar day extension for Milestone 2. In the change order request for the 333 Project, Pulice requested an equitable adjustment to Contract 333 in the amount of $31,729,661.62, a 625 calendar day extension of time to complete Milestone 1, and a 142 calendar day

16

extension for Milestone 3. The Engineer sent a letter to Pulice on December 4, 2019 explaining that the change order request for the 332 Project was denied because Pulice failed to provide proper written notice in accordance with the special provisions. The Engineer sent an identical letter on December 5 denying the change order request for the 333 Project.

At no point did Pulice present evidence establishing that the Engineer acted with "partiality, fraud, misconduct, and/or gross error" with respect to the Engineer's denial of Pulice's claims. *See James Constr. Grp.*, 2023 WL 3301739, at *6 (concluding that the City's governmental immunity was not waived as to the contractor's breach of contract claim because the contractor failed to present evidence showing how the City's Engineer acted with "partiality, fraud, misconduct, and/or gross error" with respect to the City Engineer's resolution of the contractual adjustment"). Additionally, Pulice does not dispute that it failed to provide timely written notice as required by the special provisions or otherwise argue that the Engineer acted in bad faith in denying the untimely claims. In the absence of a valid and viable claim following the Engineer's determination, such as a claim for gross misconduct or bad faith, the County's governmental immunity is not waived as to Pulice's claims based on misconduct by the Engineer because Pulice has not pleaded or presented evidence showing a viable or valid claim based on gross misconduct or bad faith. *See Jones Bros.*, 92 S.W.3d at 481–82. Accordingly, we sustain the County's fourth issue.

## V.     MSE Wall Panels

As its final issue, the County asserts that Pulice waived its claim concerning the MSE wall panels because Pulice executed agreed-to change orders to the contracts. Pulice contends that a genuine issue of material fact exists as to whether it waived any claims because the waivers included in the change orders only applied

to the new form liners and not the other claims for delay or costs associated with the MSE wall panels.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996); *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 627 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The elements of waiver are (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008); *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 542 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Intent to waive must be clear, decisive, and unequivocal. *Shannon*, 476 S.W.3d at 643. A court should conclude a waiver occurred only when a party unequivocally manifested the intent not to assert its rights. *Thompson v. Kerr*, No. 14-08-00978-CV, 2010 WL 2361636, at *4 (Tex. App.—Houston [14th Dist.] June 15, 2010, no pet.) (mem. op.) (citing *Robinson v. Robinson*, 961 S.W.2d 292, 299 (Tex. App.—Houston [1st Dist.] 1997, no writ)).

Here, the record establishes that Pulice had an existing right under the contract documents to request additional compensation for changes to the MSE wall design made by the County. *See Ulico Cas.*, 262 S.W.3d at 778; *see also Clear Lake Ctr.*, 416 S.W.3d at 542. Under Article 8.11 of the special provisions to the TxDOT Standard Specifications, "[a] Change Order amending the contract duration, completion date or amount shall only be considered after the Contractor has made such a request in a timely manner accompanied by proper documentation supporting such a request." In a letter dated June 12, 2016, Pulice notified the County of ongoing costs to both projects due to changes in the aesthetic design of the MSE walls. The

18

original MSE wall panel design repeated the wave pattern every two panels with a height requirement of 5 feet to 7.5 feet from finished grade. The revised design repeated the wave pattern every four panels with a height requirement of 5 feet to 6.25 feet from finished grade.

The record also shows that Pulice had actual knowledge of its rights under the contract documents. *See Ulico Cas.*, 262 S.W.3d at 778. In the June 12 letter, Pulice stated that it was assembling extended overhead costs associated with the design changes and that it "reserve[d] the right to finalize the impacts to the project schedule and extended overhead upon completion of the delay per section 8.11 of the special provisions."

Lastly, the record demonstrates that Pulice intended to relinquish its rights or engaged in intentional conduct inconsistent with the right claimed when it executed agreed-to change orders to the contract documents. *See id.* On June 25, 2016, Pulice executed Change Order 8 to Contract 332 and Change Order 5 to Contract 333. Each change order described the work being revised as "[a]esthetic wave design change." Pulice received an additional $24,293.75 as compensation for each project, but no additional days were added to the contract time. Each of the change orders stated that "[t]his change order covers all the labor, materials and equipment used to complete the work." Additionally, each of the change orders included language above the signature line providing that

> [t]he Contractor must sign only when the Change Order contains extra work or price modification or if the character of the work changes significantly. The Contractor further agrees that for the consideration in this change order, HCTRA will not pay for any additional charges for time, expense, overhead and profit or loss due to this change.

Even though Pulice requested additional compensation and time for design changes to the MSE wall panels in the change order requests submitted in June 2019,

it effectively relinquished any rights pertaining to the MSE wall panel designs by executing Change Order 8 to Contract 332 and Change Order 5 to Contract 333. *See Thompson*, 2010 WL 2361636, at *4 ("A court should find waiver where a party unequivocally manifested an intent to no longer assert its rights."). To the extent that Pulice argues that a fact issue exists because it "never intended to waive any rights," it manifested its intent to not assert its rights by accepting compensation for changes to the MSE wall panel design and agreeing to the change orders containing language stating that the County would not pay for any additional charges for time, expense, overhead, and profit or loss due to the requested change. *See id.*

We conclude that the County conclusively established that Pulice waived its right to the claim relating to the MSE wall panel design. Because Pulice failed to raise a genuine issue of material fact, we sustain the County's fifth issue. *See Clark*, 544 S.W.3d at 771.

## *Conclusion*

We conclude that the trial court committed reversible error in denying the plea to the jurisdiction. We therefore reverse and render dismissal for want of subject matter jurisdiction.

/s/ Frances Bourliot
Justice

Panel consists of Justices Wise, Bourliot, and Wilson.